49 So.2d 465 (1950)
SINGLEY
v.
THOMAS.
No. 7545.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1950.
Rehearing Denied January 5, 1951.
*466 Warren Hunt, John C. Morris, Jr., Rayville, for appellant.
Carey J. Ellis, Jr., Rayville, Ben Stevens, Hattiesburg, Miss., for appellee.
KENNON, Judge.
Plaintiff filed this suit to recover damages for personal injuries sustained by him on June 23, 1945, when the automobile in which plaintiff was a passenger was involved in an intersectional collision with a car operated at the time by defendant. Plaintiff's petition set forth that as defendant approached an intersection with a right-of-way road, he brought his vehicle almost to a stop; that consequently the driver of the vehicle in which plaintiff was riding continued forward on the assumption that defendant had yielded the right-of-way, whereupon defendant, without warning, accelerated his car forward into the intersection and the collision occurred in spite of the efforts of the driver of the car in which plaintiff was riding to avoid same; that defendant either saw or should have seen the approach of the car in which plaintiff was riding, and that his action in cutting into the highway and obstructing the intersection in the face of the oncoming traffic constituted gross negligence and was the cause of the collision and its resulting injuries to the plaintiff.
The answer admitted the occurrence of the collision and that plaintiff received some injury as a result thereof, but asserted that the sole proximate cause of the collision was the excessive speed at which plaintiff's son, Alton Singley, was operating the car in which plaintiff was a passenger. In the alternative, and in the event the Court should find defendant negligent, defendant set forth that plaintiff was guilty of independent negligence in that he had full control and direction over the driving of the car by his son and that, although plaintiff knew the car was being driven at an excessive rate of speed, he sat in the front seat reading a newspaper, paying no attention to the negligent acts of his son. Defendant further pleaded that the trip was a joint venture between plaintiff and his son.
In the further alternative, defendant pleaded that the driver of the car in which plaintiff was riding was guilty of contributory negligence in failing to stay on his own side of the road, in failing to maintain a proper lookout and in driving at an excessive speed on the graveled road, and that plaintiff was chargeable with this contributory negligence for the reason that plaintiff's son was acting as plaintiff's agent at the time of the collision.
The District Court found that plaintiff was a guest in the car at the time of the collision; that he and his son were not on a joint venture and his son was not his agent and consequently, plaintiff was entitled to recover in the event defendant was negligent, regardless of whether or not plaintiff's son was guilty of contributory negligence. The District Court concluded *467 that the defendant was guilty of negligence in driving out into the intersection across the path of the oncoming car, and rendered judgment in plaintiff's favor for $7892.45.
Defendant appealed. Plaintiff answered the appeal, asking that the judgment be increased by $2500.
The day before the accident, Mr. Alton Singley, plaintiff's thirty-three year old son who had recently been discharged from the Army, borrowed a Ford automobile from his married sister in which he and his wife drove to the home of his father. The next morning plaintiff accompanied this son to the town of Delhi, in the same Ford car that Alton had borrowed from his sister. In Delhi young Singley transacted business at the bank while plaintiff visited a doctor for medical treatment. Afterward, they started back to plaintiff's home, which was located in Richland Parish some distance south of Dunn, Louisiana on what is known as the Cooper Road. As the Singley car proceeded south it was necessary that it pass the point where the Robinson Road enters the Cooper Road from the west. The Robinson Road does not cross the Cooper Road the intersection being in the shape of a "Y," the north prong of the "Y" making a more gentle curve than the south prong. Defendant, in a Plymouth sedan, was driving eastward on the Robinson Road. There were no obstructions and the Singley Ford and the Thomas Plymouth was each visible to the occupants of the other car as they approached the intersection and collision point.
As the defendant Thomas, driving on the Robinson Road, approached its intersection with the Cooper Road, he slowed his Plymouth car down almost to a stop. Looking to his left, he observed the approaching Singley Ford driving south at a speed of forty to forty-five miles an hour. Deciding that the Singley car was sufficiently north of the intersection to permit his Plymouth to cross its path, defendant Thomas accelerated his car out into the intersection, in front of the oncoming Singley Ford. Meantime, young Singley, approaching from the north, observed the lessening speed of the Thomas car as it reached the intersection, concluded that the Plymouth would yield right-of-way to him, and continued southward at an undiminished speed. The left front of the Singley Ford collided with the left front of the Thomas Plymouth just before the Thomas car had completed its swinging turn and while it was headed somewhat east of north and was just short of clearing the west side of the Cooper Road, on which the Singley car was traveling.
In spite of the many pages of detailed testimony by the occupants of both cars and those who observed their positions on the road following the accident and the skid marks made by each, it is difficult to determine the exact point of impact. However, the testimony as a whole, including the plats and diagrams, leaves no doubt but that the defendant Thomas was negligent in driving his Plymouth car into the intersection at a time when the oncoming Singley Ford was plainly visible and so close that there was not time for Thomas to clear the west half of the Cooper Road ahead of the oncoming Singley vehicle.
Even though Thomas, since his Plymouth was approaching the Singley Ford from its right, had the right-of-way, he was not justified in entering the intersection in the path of the oncoming southbound Singley vehicle. Defendant Thomas, although he slowed down as he approached the intersection and observed the approaching southbound vehicle, lost the benefit of his cautious approach and effective surveillance to the north when he mistakenly decided that he could resume sufficient speed to cross the west half of the Cooper Road in time to be out of the path of the oncoming southbound Singley vehicle.
The action of defendant Thomas in slowing his car as he approached the intersection was calculated to make the driver of the southbound vehicle believe that Thomas had yielded the right-of-way. Nevertheless, the situation was such that the younger Singley should have slackened his speed and kept his car under control as *468 it approached the potential danger. The negligence of young Singley in approaching the intersection at an undiminished speed at a time when the approaching Thomas vehicle was plainly visible, was a contributing cause of the accident and plaintiff's subsequent injuries. Young Singley was also guilty of negligence in operating his automobile with inadequate brakes. Our conclusion is that the accident resulted from the joint negligence of defendant and the driver of the Singley automobile. Had either of the two drivers exercised reasonable and proper care as he approached the intersection, the collision would not have taken place.
Defendant in asserting his freedom from negligence has cited the case of Blevins v. Drake-Lindsay Co., Inc., La.App., 144 So. 257, 261, and in brief quotes from that case as follows: "If an automobile driver, acting as a reasonable, cautious, and prudent person, and not being aware that a car he sees at some distance away is exceeding the speed limit, believes that he will be able to drive over an intersection in safety, it is not negligence in him to proceed to cross the intersection. A driver is not required to do what often is an impossibility, that is, to determine whether or not an approaching automobile on another street is violating the speed limit. As stated, the test is not the actual speed which the other car is making, but rather whether or not the driver of the car attempting to cross the intersection in front of an oncoming car, acted as an ordinary, prudent, reasonable, and cautious person would have done under similar circumstances."
We agree with the principle of law contained in the above quotation, namely, that a motorist approaching an intersection need not determine whether an automobile on another road or street is speeding, and that a motorist entering a street intersection need act only as a reasonable person would under similar circumstances, but we find as a fact in the case before us that the action of Thomas was not that of a reasonable and cautious person. By first bringing his car almost to a stop, he thereby made it impossible for him to quickly clear the intersection. He then began the crossing when, to say the least, it was a close decision as to whether his car could clear the west side of the road before colliding with the approaching vehicle. Under such circumstances, a reasonably prudent person would refrain from entering the intersection unless there were not only timeon a close calculationfor him to clear the path of the approaching vehicle, but also a reasonable margin for safety.
An examination of the opinion in the Blevins case, supra, indicates that the plaintiff made no such close decision, as Blevins only observed that defendant's car was entering the intersection at a rapid rate of speed "after they (Blevins) were well within the intersection, at a time when it was too late to avoid an accident".
We next consider whether the contributory negligence of young Singley is a bar to his father's recovery against the defendant Thomas. On this point, the evidence sustains the finding of the District Court that plaintiff's status was that of a guest in the automobile at the time of the collision. The automobile belonged to plaintiff's married daughter, who lived some miles from his home. Alton Singley, the driver, was thirty-three years of age and, so far as the evidence discloses, he borrowed the car from his sister on his own responsibility. On the morning of the accident, the car was in his control and custody. It was only through his son's invitation that plaintiff rode to Delhi and back to the point of the collision. There was no joint venture inasmuch as the younger Singley had the complete right to control the vehicle.
Defendant likewise failed to prove that plaintiff was guilty of any independent negligence. So far as the record shows, the younger Singley was a competent driver. It is true that plaintiff was engaged in reading a newspaper at the time of the collision, but there is no proof that, prior to the time his father purchased the newspaper and began to read same, Alton Singley had been guilty of any careless or indiscreet actions in driving calculated to put the passenger on guard or to cause the passenger to feel that he could not rely upon his judgment *469 in the operation of the automobile, the possession of which had been given him by its owner. In the absence of a showing that a guest has actual or constructive knowledge that a driver is not competent or fit to operate a vehicle, a guest may rely upon the driver and is not required to monitor the operation or to pay attention to the road and other traffic conditions. Of course, the guest is obliged to exercise reasonable care; to meet any conditions that may arise in a sensible manner and to promptly warn the driver of any unusual danger that may come to the guest's attention in the exercise of this reasonable care. Delaune v. Breaux, 174 La. 43, 139 So. 753.
In support of the charge of individual negligence on the part of plaintiff, defendant has cited the case of Gray v. Southern Auto Wreckers, Inc., La.App., 166 So. 154, 156, which is distinguishable from the case before us in that the passenger in the Gray car admittedly actually saw the other vehicle as it approached the crossing in front of the path of the Gray car and, nevertheless, failed to give warning to the driver. Plaintiff in the present case never saw the approaching Thomas vehicle. If the plaintiff here is to be held guilty of individual negligence, it must be on the basis of his relying completely on the driver and turning his entire attention to the reading of his newspaper, rather than on his failure to give the driver warning of a danger apparent to and observed by the guest. However, the Gray case is similar to the case before us in that the driver of the Gray vehicle, who had the right-of-way, was held negligent in taking an obvious risk by continuing into the crossing in the face of a vehicle coming into the highway and directly across his path. The driver of the Gray vehicle was held negligent in continuing into the path of the approaching vehicle, of which he had an unobstructed view, even though the other party was "grossly at fault", and even though Gray had the right-of-way. We quote from the syllabus of that opinion: "Person having right of way is not relieved from necessity of looking into direction from which others may be expected to approach, and, where such care would have prevented accident, person failing to look cannot recover, even though other party was grossly at fault (Act No. 21 of 1932, § 3, rule 4)."
That the person having the right-of-way cannot drive into an intersection, in the face of an obvious hazard, is stated in the body of the Gray opinion in the following language: "It was his duty then to drive his car and have it under such control as to avoid an accident. He did have the right of way, but that did not make him any the less negligent for his taking an obvious risk and hazard which he could and should have easily avoided. It was voluntarily taking a hazard and risk which was not necessary."
In the case before us, we find Thomas was negligent in entering the intersection at a time when the Singley car was in plain view and coming on with undiminished speed. He voluntarily assumed an unnecessary hazard and risk and is guilty of negligence. The fact that the younger Singley was also guilty of negligence and that the accident would not have occurred without the concurring negligence of the Singley driver, does not relieve Thomas of his responsibility to plaintiff as a joint tortfeasor.
No proof was introduced in support of defendant's plea that the younger Singley was acting as an agent of his father at the time of the accident.

Quantum
Plaintiff, a farmer by occupation, was sixty-five years of age at the time of his injury on June 23, 1945. After the accident he was taken to a clinic in Delhi in an unconscious condition. From there he was removed to a hospital in Vicksburg, Mississippi, where his condition was diagnosed as a compression fracture dislocation of the second cervical vertebrae, with lacerations of the face. A plaster cast was applied to include his upper chest, neck and head so as to immobilize the neck. The cast was replaced with a brace on July 6th. Plaintiff left the hospital on July 10th, but was confined to his home in a semi-helpless condition for an additional sixty days. He wore the brace continuously for several months and afterwards on occasions when *470 he was riding in an automobile or wagon, or engaged in other activities in which jolts or injury were likely. He was examined thoroughly by Dr. A. Scott Hamilton on June 15, 1949, nearly four years after the accident. The testimony of Dr. Hamilton, a recognized authority in the field of orthopedic surgery in this state, was introduced by defendant. Dr. Hamilton testified that x-ray revealed that the plaintiff had suffered mild compression fractures of the second and third cervical vertebrae; that there was a backward bending of the cervical spine at this point; that the healing had been accompanied with kyphotic deformity, and that, with respect to the body as a whole, plaintiff's disability was approximately 15%. He further testified that plaintiff's condition was permanent in character, and he thought the permanent disability he found was not likely to either increase or decrease in intensity.
Dr. G. H. Martin, who treated plaintiff in Vicksburg, testified that his pain was severe for the first seven days following the accident, and again for the first days after he was placed in the brace. His estimate of the permanent disability is shown in the following extract from his testimony:
"Interrogatory No. 29. What were your physical findings and diagnosis of Mr. Singley on the occasion of the final examination? Answer: This examination was made on February 21, 1946. The patient complained of residual pain and stiffness of the neck. He could turn the chin to the right about 20 degrees, and to the left about 35 degrees. Normal range of motion would be considered as 45 degrees in either direction. There was almost full range of forward motion, that is, moving the chin toward the chest, and a slight decrease in backward motion, that is, on moving the head backward on the spine. There was no tenderness present. Final diagnosis: Healed communuted fracture dislocation of the second cervical vertebra, with residual traumatic arthritis."
"Interrogatory No. 34. If Interrogatory No. 33 was answered in the affirmative, explain briefly in what particular manner you considered Mr. Singley permanently affected. Answer: In view of the fact that this patient had a badly communuted and displaced fracture of the neck, even after healing has occurred, there will continue to be some deformity, stiffness and limitation of range of motion of the neck, which will be permanent."
"Interrogatory No. 36. Assuming that Mr. Singley is a farmer by profession, can you approximate with any degree of accuracy the percentage of Mr. Singley's permanent disability as a result of his injuries? Answer: I would estimate his permanent disability as ten (10%) per cent."
In contrast to the above estimates of the percentage of disability suffered by plaintiff, Dr. T. M. Sayre, a general practitioner, testified that plaintiff was 100% disabled to carry on his occupation as a farmer.
In his comprehensive written opinion the judge ad hoc of the District Court stated that plaintiff, at the time of the trial, was 100% disabled, inasmuch as he is a farmer by occupation and not qualified or trained to make a living otherwise.
Our conclusion is that plaintiff, although not 100% disabled, has suffered a permanent injury which will prevent his performance of many of the heavy tasks ordinarily associated with farming operations. We are reluctant to disturb the award of the District Court, who has had the benefit of personal observation of the injured party, as well as the testimony of the medical and lay witnesses, but after a close study of the record, we have concluded that a reduction of $1000 would bring the award into line with our appreciation of the testimony.
The judgment appealed from is amended by reducing same to $6892.45, and as amended, same is affirmed. Costs of appeal to be paid by plaintiff, other costs by defendant.