BOLIN, Judge.
This suit arises out of an accident that occurred in Caddo Parish just beyond the city limits of Shreveport on March 15, 1959. The plaintiff, Mrs. Barbara Akers Martin, was riding on the front seat of an automobile driven by her husband, Obie Martin, which was traveling outbound on a road leading to Blanchard, Louisiana. While so proceeding, the vehicle was involved in a head-on collision with an inbound automobile driven by Claude Moore. The collision occurred almost entirely within the outbound lane of the highway upon which the Martin car was entitled to travel.
As a result of this accident the plaintiff suffered pe'rsonal injuries for which she instituted a direct action against the defendant, Firemen’s Insurance Company of Newark, New Jersey, as the liability insurer of the automobile being driven by her husband. The case was tried before a jury which returned a verdict in favor of the plaintiff for the sum of $10,000. The defendant filed an application for a new trial which was predicated principally upon the contentions that plaintiff had failed to establish with reasonable certainty that the defendant’s insured was guilty of any negligence which was the proximate cause of the accident, and further that the plaintiff, having had the same opportunity to observe the conditions as they existed and developed, was guilty of the same negligence as her husband; and that her failure to warn him of these conditions was contributory negligence on her part. This motion for a new trial was amended so as to allege the discovery of new evidence on the part of the defendant after the original trial.
The defendant’s motion for a new trial was overruled and, in connection therewith, the trial judge assigned written reasons for his ruling wherein he gave his version of certain factual matters and stated he was in complete agreement with the conclusion reached by the jury.
In all cases such as this there is naturally some conflict in the evidence and this case is no exception. Under such circumstances, it is the duty of the appellate court to make a careful examination of the record and to ascertain therefrom, if possible, the conclusions reached by the trial court on such factual matters and to adopt same in its determination of the legal issues involved, unless it finds clear and manifest errors in such conclusions. After an examination of the record in this case, we find no such error committed by the jury, or- *330 judge below, and therefore, we must accept' such findings in our determination of the case. In his written reasons for refusing the defendant a new trial, the district judge found the facts to be as follows:
“The undisputed and uncontroverted evidence in this case shows that: The plaintiff was a passenger in an automobile; her host is the defendant’s insured; the accident happened- on a relatively straight and level stretch of 2-lane blacktop highway; the highway on which the accident occurred had a very narrow shoulder on the insured’s right-hand side of the road, which descended sharply into a deep ditch along the insured’s right-hand side of the road; the accident was a head-on collision in the insured’s own lane of travel'; the other car involved in the accident was driven by an intoxicated negro, whose passenger appeared and testified at the trial; the intoxicated negro was attempting to pass another vehicle at the time of the accident.
“Also uncontroverted and undisputed are the facts that the straight stretch of highway on which the accident occurred is something in excess of 1000 feet in length; that the passenger in the negro’s automobile and the insured had an unobstructed view of each other when the automobiles were something more than 1000 feet apart; that both vehicles were traveling at a rate of speed between 40 and 50 miles per hour; that the insured did observe the negro’s automobile approaching in his lane at approximately 1000 feet distant, but relied on his belief that the negro would return to his own proper lane of travel; that when it became apparent that the negro would not leave the insured’s lane of travel, the insured attempted to bring his automobile to a halt, both vehicles skidding a considerable distance to the point of impact.”
Many “head-on” collision cases have been decided by the Appellate Courts of this State, and while the facts in each naturally vary on such matters as distance, speed, location of the approaching vehicle in relation to the center of the highway, etc., the same principle of law has been applied in every case. Our courts have uniformly adopted the following rule which we quote from Blashfield’s Cyclopedia of Automobile Law & Practice, Permanent Edition, Vol. 2, § 919:
“A motorist has a right to assume that the driver of a vehicle coming from the opposite direction will obey the law, and to act upon such assumption in determining his own manner of using the road. A driver, therefore, proceeding on the right side of the traveled highway, may assume that the driver of a vehicle approaching on the same side, or on his left-hand side, will do all that a reasonably prudent person, under all the circumstances, would do to avoid a collision, which ordinarily would be to yield half the way, or to turn out in time to avoid a collision, and that such driver will not force him, in violation of the statute or ordinance, or the law of the road, to turn from the part of the road on which he is lawfully driving.
“Likewise, a motorist on the right side of the road and traveling in a lawful manner can assume that one approaching in the opposite direction will control his car in obedience to the law of the road and will not suddenly turn across his path.
“These assumptions may not be indulged in, however, after he sees or ought to see, from the situation of the cars or highway or the conduct of the approaching driver, that they are unwarranted. In other words, the duty of an automobile driver, who is on the right side of the street, to stop or take other precautions to avoid a collision with an approaching vehicle, only arises when by due care he discovers that another on the wrong side of the street *331 cannot or will not himself turn to the right to clear his ivay.” (Emphasis ours.)
Applying the above rule to the facts of this case, it is evident that Claude Moore was guilty of the grossest type of negligence in operating his vehicle entirely on the wrong side of the road, and continuing such negligent operation until the impact occurred. It is likewise clear that Obie Martin had a right to assume that the motorist who was approaching him on the wrong side of the road would yield or turn out in time to avoid the collision. The serious question to be decided is whether under the facts of this case Obie Martin indulged in this assumption too long. Relative to this question, an examination of the record discloses that the judge below gave the following charge to the jury:
“The question of whether or not the driver of an oncoming automobile observing a car on the wrong side of the highway * * * has the last clear chance of avoiding an accident is a question for the jury. The answer depends on whether the oncoming driver observed or should have observed that the other driver had created or was creating a dangerous situation, and whether, after such time, the oncoming driver could have avoided the accident in question, but, nevertheless failed to do so.”
An examination of the jurisprudence shows that this question has been presented to our Appellate Courts on many occasions, and that in some of the cases the operator of the vehicle on the right side of the road was found free of negligence. It would serve no useful purpose to cite all of these cases. An examination of Wood v. Manufacturers Casualty Ins. Co., La.App. 2 Cir., 1958, 107 So.2d 309, will reveal the citation of many other cases on the same point. In that case, the driver of the vehicle on the right side of the road was found to be free of any negligence. However, as correctly pointed out therein, the decision was predicated on factual findings that the driver only discovered the peril of the approaching vehicle approximately 150 feet away.
One of the most recent cases holding the driver on the right side of the road was guilty of negligence for indulging in the assumption for an unreasonable length of time that the driver approaching him on the wrong side of the road would return to his own proper lane of travel is Chouest v. Remont, La.App. 1 Cir., 1955, 81 So.2d 568, 570. In that case, Judge Tate, as the organ-of the court, correctly stated the rule a& follows:
“Whether or not the oncoming driver observing the other car executing an unusual maneuver in his path and on its wrong side of the highway has the last clear chance of avoiding the accident is normally a question of fact, depending on whether the oncoming driver did or should have observed that the other driver had created or was creating a dangerous situation; and whether after such time, the oncoming driver could have avoided the accident in question, but nevertheless failed to do so, Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195; Russo v. Texas and Pacific Railroad Co., 189 La. 1042, 181 So. 485; Cassar v. Mansfield Lumber Co., 215 La. 533, 41 So.2d 209.”
Therefore, in the final analysis, we have before us a determination of a factual issue. Under these circumstances it is not necessarily the duty of this court after reading the record to substitute its own judgment for that of the judge and-jury below, but to accept their findings unless manifest error is found therein. While a reading of the record of the instant case fully convinces us that this factual matter could have been resolved either way by the court below, we are unable to find manifest error in the conclusions that were reached. In overruling the defend *332 ant’s motion for a new trial, the trial judge had this to say:
“Traveling at a rate of speed about 66 feet per second (45 miles per hour), the insured observed or should have observed the hazardous condition at least 1000 feet away from him. From this point, he was about 500 feet from the point of impact. Traveling at a constant rate of 45 miles per hour, he would have reached the point of impact in something more thaii seven seconds. Assuming that he used up nearly two seconds in attempting to ¡bring his car to a halt, the uncontra-‘dicted evidence shows that he continued down the road in the face of apparent danger, taking no action to ■extricate himself, for a period of five ■seconds.
■“The jury concluded, and the Court agrees, that this constitutes negligence which was a proximate cause of the accident.”
Having studied the entire record in this case, we find no manifest error in the conclusion reached below as to liability.
We now pass to the defendant’s contention that the plaintiff was guilty of independent contributory negligence in failing to warn her husband of the impending danger. It is elementary that such a plea is an affirmative defense, and accordingly, the burden of proof rests upon the defendant. There was no evidence introduced that the plaintiff knew or should have known of the impending danger so as to warn her husband, and the judge and jury below, were correct in rejecting this plea. In the absence of a showing that a guest has actual or constructive knowledge that a driver is not competent or fit to operate a vehicle such guest may rely on the driver and is not required to monitor or pay attention to the road and other traffic conditions. Delaune v. Breaux, 1932, 174 La. 43, 139 So. 753; Singley v. Thomas, La.App. 2 Cir., 1950, 49 So.2d 465.
In the defendant’s motion for a new trial below, it was alleged that it had been discovered that Obie Martin had made prior statements to the Assistant District Attorney that were contradictory to those made by him during the trial. This application was overruled by the district judge, and even though no written reasons were assigned, it appears to us that his ruling was predicated on the lack of due diligence on the part of the defendant. In any event, the granting of a new trial is a matter vested, within the sound discretion of the trial judge, and his ruling thereon will not be disturbed unless it clearly appear that he has abused his discretion. Guidroz v. Travelers Ins. Co., La.App. Orleans, 1958, 99 So.2d 916. Suffice it to say that we do not find any such abuse in his refusal to grant a new trial herein.
For the reasons expressed above the judgment below is affirmed at the appellant’s cost.
Affirmed.