LOTTINGER, Judge.
This matter is before us on an appeal taken by Elmo Maryland and Geraldine Maryland, father and mother, respectively, of the minors Anthony Elbert Maryland and Elmo Maryland, Jr., occupants of a vehicle operated by Victoria Rose, defendant’s-appellee’s (Marquette Casualty Company’s) insured, from a judgment rendered by the Trial Court in their favor against defendant-appellee, as follows:
Elmo Maryland, individually and as the Administrator of the estate of his minor child, Anthony Elbert Maryland:
1. Death of Elmo Maryland, Jr. $1,500.00
2. Medical expense for Anthony Elbert Maryland and funeral expense for Elmo Maryland, Jr. 317.50
3. Damage to Anthony Elbert Maryland 750.00
TOTAL $2,567.50
Geraldine Maryland: $1,500.00
The instant matter was consolidated for trial with a suit entitled JOSEPH SAMPERE, IND. ETC. ET AL, vs. MARQUETTE CASUALTY COMPANY, ET AL, No. 86907 of the Docket of the Lower Court, wherein judgment was rendered against Marquette Casualty Company and its insured, Victoria Rose and Lloyd Rose, in the total amount of $19,144.15. The Trial Court found that Marquette Casualty Company’s liability under its policy was the sum of $10,000.00 and that the damages fixed for the plaintiffs in each suit should be pro-rated in order that the total damages awarded would not exceed Marquette’s liability. The pro-rata award established by the Trial Court resulted in an award to Elmo Maryland in an amount of $1,106.13 and to Geraldine Maryland in the amount of $646.23.
*227 The Trial Judge thoroughly analyzed the issues presented and we quote from his written reasons with approval as follows:
“It was stipulated by counsel that the above two cases would be consolidated for the purpose of trial, with separate judgments to be rendered in each case.
“Suit No. 86,907 is a suit by Josie Sampere and Joseph A. Sampere, individually, and as administrator of the estates of his two minor children, Roy Sampere and Rickie Sampere, and against Lloyd Rose and Victoria Rose, husband and wife, and their insurer, Marquette Casualty Company. The original petition named as one of the defendants Marquette Insurance Company, but the petition was amended naming Marquette Casualty Company as a defendant. Plaintiffs ask for judgment, in solido, against the defendants in favor of Joseph A. Sampere, Individually, in the amount of $23,217.15, and as administrator of the estate of his minor child, Rickie Sampere in the sum of $15,000.00, and as administrator of his minor child, Roy Sampere, in the sum of $3,000.00, and in favor of Josie Sampere in the amount of $50,000.00.
“Briefly, plaintiffs allege that they were proceeding north on Highway 61 (Airline Highway) in Ascension Parish, Louisiana, near the village of Prarie-ville, about 7:05 P.M. on the night of October 15, 1961 in a Ford automobile. The car was owned by and was being driven by Joseph A. Sampere, and Mrs. Josie Sampere was sitting on the front seat beside him, with the two named minor children on the back seat. Plaintiffs allege that as they approached the intersection of said Highway 61 by Highway 42 that a Cadillac automobile, owned by defendants Lloyd Rose and Victoria Rose, and being driven at the time by Victoria Rose, made a left-hand turn directly in front of plaintiffs’ car causing a collision between the two vehicles, the front of plaintiffs’ Ford car striking the right side of defendants’ car causing damage to plaintiffs and their two minor children and the car they were driving, set out in detail in plaintiffs’ petition.
“Plaintiff Joseph A. Sampere alleges that defendants’ car was some eight or ten feet directly in his path when he saw it, and that he had no opportunity to put on his brakes or to avoid the collision, and that under the circumstances it was impossible for him to have done anything to avoid the collision. Highway 61 at this point is a four-lane highway with a neutral ground between the north and south bound lanes and the intersecting highway is paved or hardsur-faced two-lane highway east of Highway 61 and a gravel road west of said highway.
“The Allstate Insurance Company intervened in the suit on the side of plaintiffs alleging that they were the collision insurer of the Ford car, owned and driven by Joseph A. Sampere, with the usual $100 deductible clause, and that the damage to said Ford car as a result of said collision amounted to $1,587.63, which less the $100 deductible left remaining $1,487.63, which amount of repairs intervenor, Allstate Insurance Company, paid plaintiff, and intervenor asks for judgment in this amount, $1,-487.63, against defendants.
“Geraldine Maryland, individually, and Elmo Maryland, husband and wife, individually and as administrator of his minor child, Anthony Elbert Maryland, intervened in this suit, alleging that these two minor children of intervenors were guest passengers in the car owned and driven by Victoria Rose, and that as a result of the collision Anthony Elbert Maryland was injured and Elmo Maryland, Jr. was killed, and they ask for judgment as a result of the injury to one of their children and death of the other, in solido, against Joseph A. Sampere and Josie Sampere and their *228 insurer, Allstate Insurance Company, and against Lloyd Rose, Victoria Rose and their insurer, Marquette Casualty Company.
“During the trial of this case attorney for Geraldine and Elmo Maryland dismissed their intervention, stating to the Court that intervenors elected to stand on their suit No. 90,442, involving this same collision.
“Defendants in their answer plead contributory negligence on the part of plaintiffs and also plead the doctrine of Last Clear Chance.
“In suit No. 90,442 Elmo Maryland, individually and as administrator of his minor child, Anthony Elbert Maryland, and Geraldine Maryland allege that their two minor children, Anthony Elbert Maryland and Elmo Maryland, Jr., were guest passengers in the car driven by Victoria Rose involved in the here-inabove described collision, and that their minor child, Anthony Elbert Maryland, was injured and that their child Elmo Maryland, Jr., was killed as a result of said collision, and that said collision was due to the joint negligence on the part of Joseph A. Sampere and Victoria Rose, and plaintiffs allege that the Allstate Insurance Company was the liability insurer of the car owned and driven by Joseph Sampere, and the Marquette Casualty Company was the liability insurer of the car owned and driven by Victoria Rose, and plaintiffs elect to bring a direct action against these two insurers, to wit: Allstate Insurance Company and Marquette Casualty Company, and plaintiffs ask for a judgment, in solido, against these two insurers in favor of Elmo Maryland in the amount of $25,317.50, and as administrator of the estate of his minor child, Anthony Elbert Maryland, in the amount of $12,000.00, and in favor of Geraldine Maryland in the amount of $25,000.00.
“It was stipulated that the policy of Allstate Insurance Company on Joseph A. Sampere was $25,000 liability on one person, $50,000 liability on two or more persons, and $5,000 property damage liability; and that the policy of Marquette Casualty Company on Lloyd Rose and Victoria Rose was $5,000 for one person, $10,000 for two or more persons, and $5,000 property damage.
“On these pleadings and stipulations the cases went to trial on the merits. At the conclusion of the trial counsel representing all parties requested the court to first render a judgment as to liability only and after this judgment as to liability was rendered by the court that counsel would then file briefs as to quantum. The court agreed to render a judgment as to liability on November 12th.
“In view of the above request and stipulations, the court will not refer to the amount of damages nor will it refer to the doctors’ testimony adduced in the trial of this case.
“The evidence conclusively shows that at about 7 o’clock P.M. on the night of October 15, 1961, Joseph A. Sampere was proceeding north on Highway 61, which is the Airline Highway and is a four-lane paved highway with a neutral ground between the north and south bound lanes, at some 55, 60 or 65 miles per hour. This collision happened at an intersecting highway sometimes referred to as Highway 42 and at other times as 929. This intersecting highway runs east and west and the Airline Highway runs north and south at this particular point. The intersecting highway 42 or 929 is paved east of Airline Highway and gravel on the west. It appears that there is a filling station in the northwest corner of this intersection. Mr. Sampere testified he was driving north in the usual manner with his lights on, talking to his wife who was on the front seat sitting by *229 him. His two children were asleep on the back seat. He testified that he saw approaching lights on the other side of the highway going south, hut that he never paid any particular attention to them. He testified that he had left New Orleans about 6 o’clock, that he was in the inside lane going north, and that he did not see the Rose car until some eight or ten feet away from him and that he did not know how the Rose car got there, but when he saw it he was right on it and it was impossible for him to do anything to avoid the collision. There is a little conflict on this point in Mr. Sampere’s testimony. He testified that some six to ten seconds elapsed after he saw the Rose car before the impact, and also that he was only eight or ten feet away from it when he saw it. A car going 60 miles an hour would certainly travel more than eight to ten feet in six to ten seconds. The Court does not attach a great deal of importance to this variance in his testimony. In a moment like this with impending tragedy a normal being is not capable of estimating time. He certainly did not take out his watch and count the seconds. Mrs. Sampere, sitting on the front seat with her husband, eating cookies and talking to her husband, testified she did not see the Rose car at all until the collision. Mr. Sampere testified that he had recently had his car inspected and that his lights were burning. In fact, he testified his lights had to be burning in order for him to drive, as it was dark. Mr. Sampere further testified that his car was damaged $1,587.63 and that Allstate Insurance Company, who had collision insurance on his car, reimbursed him, or paid him $1,487.63.
“Mr. James A. Sloane, an accountant from Baton Rouge, testified that the night of the accident he was following the Sampere car, and had been following it for some time. He testified he was in the outside lane going north and Mr. Sampere was in the inside lane going north. He testified Mr. Sampere’s lights were on and that he saw the tail lights and stop lights working as he followed this car. He said at the time of the accident he was from a quarter to a half mile away, and that he saw the Rose car as it approached from the north on the other side of Airline Highway, and that the Rose car was attempting to make a U turn and did make an abrupt turn to the left directly in the path of the Sampere car. There is some discrepancy in Mr. Sloane’s testimony at this point as he testified that he saw the Rose car approaching from .the north some five or six minutes before the collision. A car going 50 or 60 miles an hour will travel quite a long way in five or six minutes. This time element is bound to be a guess on the part of Mr. Sloane. He does testify he saw Mr. Sampere’s stop lights come on and he also testifies that the Rose car was approaching from the north on Highway 61 and turned left directly in the path of the Sampere Car. Mr. Sloane testified that in his opinion there was nothing Mr. Sampere could have done to avoid the collision.
“Victoria Rose testified that she had come from Baton Rouge and that she had pulled over to Lewis Esso Service Center, which is a filling station presumably on the northwest corner of the intersection of these two highways. The road is gravel west of Airline Highway and presumably you could get to and leave this service station either by going directly out to the Airline Highway or to the intersecting Highway 929. Victoria Rose testified she bought two dollars worth of gas from this service station and received some green stamps, and that she went out to the intersection of the two highways by way of Highway 929. She testified she stopped when she got to the Airline Highway and looked in both directions *230 and didn’t see any cars coming and did not see any lights and that she drove over in the last lane, and to use her language ‘I drove in the last lane and that’s where the car hit me and knocked me on the neutral ground’. She relates several times that she looked in both directions and didn’t see any cars coming and didn’t see any lights. She testified she was traveling from ten to fifteen miles per hour as she crossed Airline Highway, or attempted to cross it. The two Maryland children were guest passengers in the Rose car. Mr. Sloane, in his testimony, testified that Victoria Rose could not have come from the filling station, but that she came down Airline Highway and made a left-hand turn directly in the path of the Sampere car.
“State patrolman, Officer Albert Arbour, Jr., testified he was about a mile away from the scene of the accident and estimated that he got to the scene within three or four minutes after it happened. He further testified that the filling station, from which Victoria Rose testified she had bought gas a few minutes before the collision, was dark and closed when he, Officer Arbour, got to the scene. He also testified he found an unopened bottle of whiskey in the Rose car.
“Except for the medical testimony, which will not be gone into at this time, the above is about all the testimony taken during this trial that had a material bearing on the question of liability.
“It is a conceded and a well established fact that there are innumerable cases in the jurisprudence of our state that holds that a left-hand turn is one of the most dangerous maneuvers a motorist can make. In the case of Martin v. Firemen’s Insurance Co. of Newark [La.App.], 127 So.2d 328, the Court said:
“ ‘A motorist had a right to assume that the driver of a vehicle coming from the opposite direction will obey the law, and to act upon such assumption in determining his own manner of using the road. A driver, therefore, proceeding on the right side of the traveled way, may assume that the driver of a vehicle approaching on the same side, or on his left-hand side, will do all that a reasonably prudent person, under all the circumstances, would do to avoid a collision, which ordinarily would be to yield half the way, or to turn out in time to avoid a collision, and that such driver will not force him, in violation of the statute or ordinance, or the law of the road, to turn from the part of the road on which he is lawfully driving.
“ ‘Likewise, a motorist on the right side of the road and traveling in a lawful manner can assume that one approaching in the opposite direction will control his car in obedience to the law of the road and will not suddenly turn across his path.”
“Also in Fontenot v. Liberty Mutual Insurance Company [La.App.], 130 So.2d 462, the Court said:
“ ‘Prior to entry into intersection, without reasonable expectation and opportunity of traversing it in safety without obstructing normal movement of traffic therein, does not constitute a “pre-emption” of intersection, and before motorist can successfully rely on doctrine of pre-emption, he must show that he entered intersection at proper speed and sufficiently in advance of automobile on intersecting street to permit him to proceed on his way without requiring emergency stop by other vehicle.’
*231 “In the case of Ruple v. Travelers Indemnity Company [La.App.], 129 So.2d 240, the Court held:
“ ‘It is the well-settled law and jurisprudence of our state that a person who attempts to make a left turn or who attempts to turn from a direct line on the public highways of the state must ascertain before turning that the turn can be made safely without endangering normal overtaking or on-coming traffic. E. G. Blanchard v. Ashby Construction Co., La.App. 1st Cir., 1957, 95 So.2d 670; Methvin v. Roshto, La.App. 1st Cir., 1957, 96 So.2d 383. The onerous burden placed upon a left turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal, which fact is disputed in the instant case, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety. Callia v. Rambin, La.App.2d Cir., 1955, 78 So.2d 44; Nichols vs. Everist, La.App.2d Cir., 1955, 80 So.2d 199.’
“There is considerable conflict in the testimony whether Victoria Rose just before the collision was coming down Airline Highway 61 from the north and made a left-hand turn into the path of the approaching Sampere car or whether she had just left the filling station and was crossing Airline Highway on Highway 929 headed east. The court does not think that this makes a great deal of difference. In either event, Victoria Rose drove her car out into Airline Highway directly in the path of the approaching Sampere car. Victoria Rose testified that she looked in both directions as she started to cross Airline Highway and didn’t see any cars coming and did not see any lights. There was a car coming because a second or two later it struck her broadside. The court believes that the Sampere car had his lights on. Mr. Sampere himself, his wife, Mrs. Sampere, and Mr. Sloane all three testified to this fact. The court is thoroughly convinced that this collision and resulting damage was due to the negligence of Victoria Rose in driving out on a highly traveled highway directly in the path of an approaching car.
“Contributory negligence has been plead by defendants on the part of plaintiff. There is no testimony in the record to substantiate this. It is elementary that contributory negligence is an affirmative defense and the burden of proof rests on him who pleads it. The doctrine of Last Clear Chance is also plead by defendants. The application of this doctrine depends on the facts as brought out in each case. There is no testimony in the record that Mr. Sampere could have avoided this accident. Assuming that he saw the Rose car approaching from the north, he had every legal reason and right to suppose that it would not make a lefthand turn or cross the intersection directly in his path. He said he was eight or ten feet from the Rose car when he first saw it. If this is true, nothing he could have done would have avoided the accident. The fact that Mr. Sampere was in the inside lane is not and could not be the proximate cause of this accident. It would have happened had he been in the outside lane.”
ifc * * ‡ *
“This suit is brought by Elmo Maryland and Geraldine Maryland, two colored people, husband and wife, for the death of their four months’ old infant, Elmo Maryland, Jr. and injury to their child, Anthony Elbert Maryland. It was stipulated that Elmo Maryland suffered damages in the nature of medical and funeral expenses as a result of the accident in the sum of $317.50. There were no other special damages proven. These two children, *232 Elmo Maryland, Jr. and Anthony Elbert Maryland, were passengers in the car with their great grandmother, Victoria Rose, the night of the accident. As stated, the infant, Elmo Maryland, Jr. was instantly killed, and the child, Anthony Elbert Maryland, injured. These two children had spent practically their entire lives with their great grand-mother Victoria Rose. As a matter of fact the evidence disclosed that the mother of these two children and one of the plaintiffs in these two suits, Geraldine Maryland, had also spent her life, or the most of it, with Victoria Rose. The evidence further shows that Elmo Maryland and Geraldine Maryland, husband and wife, plaintiffs in this suit had separated many, many times. There was not much family love and affection shown. The Court in listening to these witnesses testify, and observing their demeanor on the witness stand, was thoroughly convinced that there had been very little parental love and affection by plaintiffs in this suit for these two minor children. The infant, Elmo Maryland, Jr., was only four months old at its death. It did not live with its parents, and even had it done so at this tender age time would soon have healed any emotional scars. The child, Anthony Elbert Maryland, was not very seriously injured. It had a scar on its upper lip and nose which was very slight and hardly noticeable on a close inspection by the Trial Judge.
“Under the jurisprudence of this State and under the circumstances surrounding the death of the infant, Elmo Maryland, Jr., and the injury to the child, Anthony Elbert Maryland, the Court feels that an award to each of the parents and plaintiffs in this suit, Elmo Maryland and Geraldine Maryland of $1,500.00 each for the death of the infant, Elmo Maryland Jr., and against Marquette Casualty Company, and $750.00 to Elmo Maryland as administrator for the estate of his minor child, Anthony Elbert Maryland, and against Marquete Casualty Company would meet the ends of justice. The real love and affection for these two children was by Victoria Rose.
“As hereinbefore stated, it was stipulated the Elmo Maryland suffered damages, funeral expenses and medicals for injury to his minor child, Anthony Elbert Maryland, in the sum of $317.50.
“Accordingly, there should be judgment in favor of Geraldine Maryland and against Marquette Casualty Company for $1,500.00 and in favor of Elmo Maryland and against Marquette Casualty Company for $1,817.50, individually, and the sum of $750.00 as the administrator of the estate of his minor child, Anthony Elbert Maryland, or a total award to Elmo Maryland, individually, and as administrator of the estate of his minor child, Anthony Elbert Maryland, for the sum of $2,567.-50, with legal interest from judicial demand until paid and all costs of this suit. The fee of Dr. W. C. Dunbar, expert witness, is fixed at the sum of $50.00 and taxed as costs.”
Plaintiffs-appellants complain of the inadequacy of their award. Same seems to us to be reasonable and, moreover, there was certainly no “abuse of the discretion” vested in the Trial Judge as announced by the latest Supreme Court decision on the subject in the case of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149.
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.