96 So.2d 383 (1957)
Gerald Robert METHVIN, Individually, etc., et al.
v.
Richard ROSHTO.
No. 4462.
Court of Appeal of Louisiana, First Circuit.
June 28, 1957.
Sam J. D'Amico, Louis D. Curet, Baton Rouge, for appellant.
Durrett Hardin & Hunter, Baton Rouge, Paul B. Dufreche, Ponchatoula, for appellee.
LOTTINGER, Judge.
On November 12, 1954 at approximately 4:15 o'clock in the afternoon an automobile accident occurred in the Parish of East Baton Rouge on U. S. Highway No. 190 at about three miles east of the City of Baton Rouge, which gave rise to the following litigation:
The matter entitled "Gerald Robert Methvin, Individually, Etc., et al vs. Richard Roshto," No. 54,021 of the Civil Docket of the Lower Court, was filed by Gerald Robert Methvin wherein he sought to recover from the defendant individually the sum of $100 and for the use and benefit of his collision insurer, Milwaukee Insurance *384 Company, the sum of $511.20 as the result of damages to his automobile under the deductible provisions of his policy and subrogation provisions thereof. This suit alleged negligence on the part of the defendant, Richard Roshto, in turning suddenly to his left without any warning or signals being given directly in the path of Methvin while he was traveling west and Roshto was driving east on U. S. Highway No. 190. Roshto answered this suit denying any negligence on his part and alternatively pleading contributory negligence on the part of Methvin in failing to heed his vehicle and in running into same after it had come to a stop off of the highway.
The matter entitled "Richard Roshto, et al vs. Gerald Robert Methvin," No. 54, 902 of the Civil Docket of the Lower Court, was filed by Roshto, individually and for and on behalf of his minor children, Richard Roshto, Jr., Violet Ivy Roshto and by Roshto's wife, Violet P. Roshto, against Methvin wherein damages were sought for automobile damage, medical expenses and personal injuries in the total amount of $16,635. Negligence was charged against Methvin in the same respect set forth in the answer filed by Roshto in the suit by Methvin against him. Methvin answered, denying any negligence on his part, and alternatively pleaded contributory negligence on the part of Roshto in the same respect as set forth in his petition.
The matter entitled "Elma Galloway vs. Gerald Robert Methvin," No. 54,903 of the Civil Docket of the Lower Court, was filed against Methvin by Elma Galloway who alleged that she was a guest passenger in Roshto's automobile and prayed for damages in the total amount of $51,391.72 for doctor bills, loss of earnings and personal injuries. Negligence is charged against Methvin in the same respect as set forth in Roshto's suit against him. Methvin answered this suit, denying any negligence on his part and averring that the accident was due solely to the negligence of Roshto. Alternatively, he pleaded contributory negligence on the part of this plaintiff in that she acquiesced in the negligent operation of the vehicle by Roshto.
The three cases were consolidated for trial following which judgment was rendered in Suit No. 54,021 in favor of Methvin individually and for the use and benefit of Milwaukee Insurance Company as prayed for. In suits Nos. 54,902 and 54,903 judgment was rendered in favor of defendants, Methvin, and against the plaintiffs, Richard Roshto, et al. and Elma Galloway, respectively, dismissing their demands and they have appealed.
Gerald Robert Methvin, called on cross examination in suits Nos. 54,902 and 54,903, testified as follows:
Just previous to the accident on November 12, 1954, he was proceeding from Pontchatoula in a westerly direction on U. S. Highway No. 190 towards the city of Baton Rouge. He had with him in his automobile his wife and two children. He had averaged not more than 50 miles per hour previously, and, at the time when he first saw Roshto's vehicle, was going about 35 miles per hour. He first saw Roshto when he was some 3 or 4 blocks away from him at which time he could not estimate his rate of speed although he did classify it as moderate. While there were no cars close to Roshto to his rear, there was one right in front of him at a distance of about 50 to 70 feet. The roadway at the place of the accident was straight and when he first saw Roshto attempt to make a turn, the car in front of him was still approaching but very close to him. He could not tell whether Roshto appeared to slow down before making his turn and he did not notice any signals whatsoever. The witness gave the following version of the accident.
"Q. When he turned, how far did you say you were from him? A. I was about 70 feet when he started to turn.

*385 "Q. What did you do when he started to turn? A. Well, first I applied my brakes and swerved to the right. And I hollered at my wife to hold on, I knew I could not avoid the accident.
"Q. Why did you swerve to the right? Was that the direction Mr. Roshto was turning in? A. He was turning into my lane. He was turning left.
"Q. He was turning towards your right? A. That's right.
"Q. And that's the direction you turned in, right? A. Exactly. I turned to the right to give him as much room on the highway as I could.
"Q. Is there any particular reason why you turned in the same direction that he was turning? A. Well, I mean, to give him as much of the highway so that he could try to stop to avoid the accident.
"Q. Did it occur to you that if he were turning to your right that you could have avoided the accident by turning to your left? A. No, Sir, I could not, because it happened so fast I didn't have time.
"Q. Are you quite sure you applied your brakes? A. I am quite sure.
"Q. Did your vehicle slow down at all? A. My vehicle slowed down.
"Q. Did you leave any skid marks? A. Yes, Sir, I left skid marks.
"Q. How much, how many feet of skid marks did you leave? A. Well, that I don't know for sure. The officers saw it.
"Q. Did you examine the scene of the accident after it happened? A. Yes, Sir.
"Q. To determine about the skid marks? A. We did, with the State Trooper which was two of them."
When asked if he was familiar with Roshto's service station on the north side of U. S. Highway No. 190, and the concrete driveway leading into same, the witness stated that he was although he had never noticed any concrete or shoulder between the highway and the edge of the neutral ground at Roshto's service station. The witness stated further that he was familiar with a gravel road running North immediately to the east of Roshto's service station, east of which is a concrete driveway approaching a Texaco Station which is still further to the east. The witness placed on a diagram purporting to be a rough sketch of the scene of the accident, a letter A at the spot where he was when he first saw the Roshto vehicle turning, which spot, he stated, was about on the east drive approaching Roshto's service station. It was stipulated that the highway at the point of the collision was 22 feet in width.
At the moment of the collision the witness's car was facing due west and after the collision, it was turned to the right and ended up facing in a northwesterly direction. The witness stated emphatically that his vehicle never left the highway until after the impact had actually occurred. The witness explained what had happened by saying that even though he turned to the right his vehicle did not have a chance to actually veer to the right except more than a couple of feet before the collision occurred. He stated that at the point of the collision, Roshto's vehicle was entirely on the highway and repeated that just previously thereto he had been proceeding at about 35 miles per hour. He stated that he could not state definitely how fast he was going at the time of the collision although his vehicle had slowed and he was going approximately 25 miles per hour or, to use his words, "I didn't have much time to slow up but I did have a brake action." The witness *386 stated that his left front collided with about the center of the front of the other vehicle or if anything, more to the left front of the other vehicle.
The witness testified on direct examination as follows:
Just previous to the accident, he was in the middle of the west bound traffic lane approximately 3 miles from what is known as the traffic circle east of the city of Baton Rouge. The weather conditions at the time were fair, there had been no rain and it was daylight at the time. After the accident, he did not get out of his automobile and talk to Roshto but gave first aid to his wife and son. The wife stayed at the scene 10 or 15 minutes until an ambulance got there. He stated that although his wife and sons were injured, that he had not filed suit on their behalf but that the reason for not filing suit was not any belief on his part that he was to blame but was for other reasons. He stated that he never talked to Roshto and that as of the time of trial, would not know him if he were to see him. He repeated that he did not know the speed at which Roshto was traveling when he made his turn. He identified the total cost of repair to his automobile as $611.20. He stated positively that at the time Roshto began his left turn that had he swerved his automobile to his left instead of to the right, that he would have collided with the vehicle which he had described as being ahead of Roshto.
Richard Roshto testified on direct examination as follows:
Just previous to the accident, he was going east, that is, leaving Baton Rouge and going in the direction of Port Vincent and he made the turn into Roshto's service station for the purpose of getting gas. With him at the time was his wife, three children, his mother and a friend. He approximated his speed before reaching the service station at from 30 to 35 miles an hour at the most. Just before reaching the service station, there was no traffic behind him, but there was one car to this front some 75 to 80 feet away. He saw the Methvin vehicle when it was 280 or 290 feet away when he commenced his turn. He marked on a diagram as point "A" the place where Methvin was when he began making his turn, and from his testimony, this point would be approximately the entrance to the gravel road leading North. He marked point "B" as the place where he began making his turn and estimated the distance between the two points at 280 feet. He stated that he was able to give the distance at 280 feet because he had stepped it off and had also used a tape to measure it. He stated that when he first began making his turn, he was aware that a vehicle was approaching and that although the car was coming pretty fast, he felt no doubt but that he could make the turn safely. When asked if he gave any signal prior to approaching the service station of his intention to make the turn, the witness stated that he gave a left hand signal, i. e., a manual hand signal by holding his hand straight out. He said that he was going about 20 miles an hour as he approached Roshto's service station, having slowed down from perhaps 35 to 30 miles an hour to that speed. He gave the following testimony. "When I started my turn, I was slowing down a little bit, and I put it in second, to pick it up and keep the automobile from stalling, and then I put her back in high, and that is when the collision happened." When he first realized that there was a danger of collision, he stated that he was already "in my turn" and that there was no way for him to speed up or stop or prevent the accident. He stated further that he first realized that he was in danger as he was leaving the westbound lane of traffic and was approximately halfway or better out of said westbound lane. He stated that he observed the Methvin vehicle just previous to the accident and that it swayed, leaving the main highway onto the side in front of the filling station and then going back onto the highway partially. He stated that at the point of impact, the Methvin vehicle was pointing in a northwesterly direction and that both automobiles were off of the highway at the *387 time of the collision. The concrete slab in front of Roshto's, he described, as being approximately 10 feet in width and stated that there is a neutral ground area with a curb around it. He did not examine the scene of the accident immediately following its occurrence because he had been put in the hospital with his wife, but did examine it the next morning. He stated that there were no tire marks left by Methvin that he could see and that just previous to the accident's occurrence, although his windows were open, and he felt sure he would have heard brakes had they been applied, he did not hear any. He stated that he saw Methvin just prior to the collision at which time he removed his hands from the steering wheel throwing them into the air when he came back onto the highway after having left it. A picture introduced as P-6 was to show what the witness testified to as being the approximate position of his car at the moment of the collision. The back bumper of the car was approximately one foot off of the highway and he was onto the concrete slab. Another picture introduced as P-7 was identified by the witness as showing what he considered to be the position of both vehicles after the accident. He stated that his right front and Methvin's left front had come into contact at the moment of the collision and that thereafter, the two vehicles moved approximately 20 feet sidewards. The witness stated that he put his hand out "maybe a few seconds" before he started his turn, and stated that he traveled approximately 75 feet "by tape measure" from the point where he began making the turn to the point where the collision occurred. He stated that his automobile was totally demolished as the result of the accident and that its value at that time amounted to $650. He stated that at the time of the collision his automobile had not come to a stop, as alleged, but was still moving.
On cross examination, Roshto testified as follows: When he saw Methvin throw his hands into the air he (Methvin) was some 175 feet east of the point of impact at which time the witness was approximately better than halfway of the west lane headed at an angle. The witness stated that from the time he saw Methvin throw up his hands the latter traveled a distance of 175 feet to the point of impact whereas he traveled at the most from 20 to 25 feet. He stated that the vehicle ahead of him was some 75 feet distant and far enough not to block his view of the Methvin vehicle. He stated also that he gave his hand signal some 2 or 3 seconds before he started his turn. He stated again that he realized that Methvin was "coming fast" but that as far as he knew, there was no danger in making the turn. He then defined "fast" as a speed of between 75 and 80 miles an hour. He stated that he must have been driving at approximately 75 miles an hour at the moment of the collision. The witness repeated that from the time when he was in the middle of the west lane of traffic he then traveled a distance of approximately 20 feet to the point of impact while the Methvin vehicle traveled some 175 feet to the point of impact. He repeated that his speed at that time was approximately 20 miles per hour.
Trooper W. R. Abadie, called as a witness on behalf of Methvin, testified on direct examination as follows:
This officer investigated the accident after its occurrence and stated that the speed limit on the highway where it occurred was 60 miles per hour. He stated that Roshto told him that he first noticed danger at a distance from the point of impact of 100 feet at which time he was going 40 miles an hour and that at the moment of impact his speed was 20 miles per hour. The officer stated that there were skid marks from the Methvin vehicle and skid marks and debris from the Roshto vehicle which enabled him to locate the point of collision. He stated that when the collision occurred, approximately 6 feet of the Methvin vehicle was off of the paved portion of the highway to the driver's right and that the back wheels of the Roshto vehicle were on the pavement with front wheels off on the concrete *388 driveway of the station. He stated that the vehicles came to rest with the Methvin car some 12 feet from the point of impact and the Roshto vehicle some 22 feet from the point of impact.
Mrs. Elma Galloway, called as a witness in her own behalf, testified as follows:
She was a passenger in the Roshto vehicle being seated in the right rear of the automobile. She was the mother of the driver and stated that they made the left turn into the service station in order to get some gas. She estimated his speed prior to the time he approached the service station at between 30 and 35 miles per hour. She stated that some 20 feet before they got to the service station the driver gave the left hand signal and proceeded to turn. She stated that she saw the oncoming Methvin vehicle and did not have any idea that there might be an accident when Roshto first began his turn. She first became aware that an accident might happen when she saw the other car sway over to the right and then come back onto the highway. When asked if she was certain whether that is what happened, the witness replied, "I certainly am. I was watching all the way there because I was sitting on the back seat and I do quite a bit of back seat driving. I watch everything!" She stated that Methvin was excited because he threw his hands up and then grabbed the steering wheel and shook it. She declined to say whether the driver Methvin was on or off of the highway at the time he threw up his hands. When he shook the wheel, she said he did so by turning same in both directions.
Mrs. Violet K. Roshto, called as a witness on her own behalf, testified as follows:
Just before the accident she was seated in the Roshto vehicle in the right front seat with her husband and baby daughter Violet Inez. She saw the Methvin vehicle approaching when Roshto began making his turn but stated that she felt no reason for alarm and first realized that there was going to be an accident when she looked up and saw the Methvin vehicle almost upon them. The witness was knocked unconscious as a result of the collision. On cross examination, this witness stated that she did not recall whether there was a vehicle in front of them and that she did not know too much about how the accident occurred because her baby, who was on the front seat with them, was ill and she had been attending to her. She stated that because of her preoccupation with the child, she did not know anything about the speed of the Methvin vehicle nor did she know whether her husband's turn was sharp or gradual. In response to a question by the court, she stated that she could not swear that her husband had given a signal for his turn as she did not actually see same.
Mrs. Mildred Joyce Methvin, called as a witness on behalf of Mr. Methvin, testified as follows:
She is the wife of Gerald Robert Methvin and was seated next to him in the front seat at the time of the accident. A baby was lying across her lap in the front seat and a six year old boy was in the rear. She estimated her husband's speed as being moderate and between 35 and 40 miles per hour previous to the accident. She stated that she did not exactly know when she first saw the Roshto vehicle and first realized what was happening when her husband shouted to her to "hold on" at which time she saw the Roshto vehicle in the west lane on their side of the highway. When asked if the Roshto vehicle was at an angle, the witness said that she could not say as she was thrown to the floor when the cars crashed and could not say truthfully what was the position of the Roshto vehicle when she first saw it. Other than that, it was on their side of the road at what she believed to be a sort of an angle and in close proximity to them. She stated that her husband swerved and that the accident occurred almost immediately between the time that her husband yelled and she saw the other car. She did not have time to brace herself. She stated further that she did not *389 have any idea how fast the Roshto vehicle was traveling.
Methvin, being recalled to the stand in his own behalf, testified as follows:
At the time Roshto began making his left turn, he, that is, Methvin, was going at a speed of about 35 miles an hour and that within five miles of the accident had never been driving 70 or 75 miles an hour or even over 50 miles an hour. He denied that prior to the accident, his automobile had gone off the shoulder and back onto the highway and then off the shoulder again. He stated that he had yelled to his wife to hold on. He stated that he managed to apply his brakes and that he was sure he had slowed his car down by some 10 miles per hour.
As will be seen from the above and foregoing, the testimony as to how the accident occurred is in hopeless conflict. The factual question presented was, however, resolved by the trial judge in favor of Methvin and we cannot say that he committed manifest error in doing so. In addition, we might add that we are not particularly impressed with Roshto's testimony. In his pleadings he specifically averred that his vehicle had come to a stop before being struck by Methvin's while on trial he admitted that he was still moving at the time the collision occurred. And, had Methvin been traveling at the rate attributed to him by Roshto, the damage to the vehicles and the personal injuries received by the occupants would undoubtedly have been far more extensive than those reflected by the record. In summary, therefore, we do not believe the trial judge committed manifest error in absolving Methvin of negligence.
This is just another one of those left turn accident cases. We have said many times before, and we do not think citations of authority are necessary herein, that a left turn across a highway constitutes one of the most hazardous maneuvers that a driver is called upon to perform and that the responsibility for seeing that such a turn can be made safely is placed upon the motorist making the left turn and he should be certain that it can be made without danger to normal overtaking or oncoming traffic.
Therefore for the reasons hereinabove stated we are of the opinion that the proximate cause of the accident herein was the negligence of the driver Roshto in making said left turn.
From the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.