283 So.2d 271 (1973)
Fenwick JENKINS
v.
DIXIE RENTAL TOOLS AND CASING CREWS, INC. and the Travelers Insurance Company.
No. 9476.
Court of Appeal of Louisiana, First Circuit.
August 23, 1973.
Rehearing Denied September 26, 1973.
Writ Refused November 28, 1973.
France W. Watts, III, Franklinton, for appellant.
Richard A. Deas, Metairie, Garic K. Barranger, Covington, and John N. Gallaspy, Bogalusa, for appellees.
Before SARTAIN, BLANCHE and WATSON, JJ.
WATSON, Judge ad hoc.
Plaintiff was injured by a falling pipe on April 30, 1964, during employment by Layne Louisiana, Inc. His crew was engaged in drilling a water well at Bogalusa. Plaintiff's job was to tend the "mud hose". The pipe, 40 feet in length and 20 inches in diameter, was lifted seven to ten feet in the air by a "Dunn Super-Safety" side door elevator before the elevator failed and the pipe fell on plaintiff's head and right hand. The elevator was rented to Layne Louisiana, Inc. by Dixie Rental *272 Tools and Casing Crews, Inc. Travelers Insurance Company was the liability insurer of Dixie at the time of the accident. The testimony establishes beyond question that the failure of the elevator was caused by a defective spring.
The case was duly tried before a jury and the jury found in favor of plaintiff, Fenwick Jenkins, and against the defendants, Dixie Rental Tools and Casing Crews, Inc. and Travelers Insurance Company, awarding damages in the amount of $75,000.00. A judgment was signed for $75,000.00 ordering $10,000.27 of this sum to be paid over to intervenor, Hardware Mutual Casualty Company, the workmen's compensation insurer of Layne Louisiana, Inc.
Dixie Rental Tools and Travelers Insurance Company have appealed, alleging error and arguing:
A. That a compensated bailor only has a duty of reasonable inspection and is not responsible to third parties for latent defects; that an inspection was made and the elevator was in good order at the time of rental and after the accident.
B. That the pipe fell due to some intervening cause which was probably improper use of the elevator, the inexperience of plaintiff and his co-worker, or the contributory negligence of plaintiff.
C. That Fenwick Jenkins was guilty of gross contributory negligence in being under the pipe.
D. That in the event the finding of the jury is affirmed as to liability, the quantum is excessive.
Both plaintiff and the intervenor argue that the jury's verdict shows no manifest error and should be sustained.
I. Liability
We are convinced that the jury was correct in finding defendants liable for plaintiff's injuries.
A compensated bailor of movables, such as Dixie Rental Tools, is responsible to a third party, such as plaintiff, for any defects in the thing leased which he could have discovered by a reasonable inspection. Lyons v. Jahncke Service, Inc., 125 So.2d 619 (La.App. 1 Cir. 1960). The faulty spring which caused plaintiff's injuries was a key part of the elevator leased by Dixie Rental Tools. The testimony shows that this spring received, at best, a cursory and ineffective examination by Dixie's employees. Therefore, Dixie Rental Tools is liable to plaintiff in the absence of contributory negligence.
Plaintiff's actions at the time of the accident were those of a conscientious employee. His job was to tend to the "mud hose" and that is what he was doing when injured. We can see no negligence in his being under the pipe when it fell, since his duties required that he be there.
II. Quantum
We have examined the testimony regarding plaintiff's injuries to determine whether the jury abused its "much discretion" in awarding damages. LSA-C.C. art. 1934(3).
According to the deposition of Dr. Hyman Soboloff, plaintiff lost his entire fifth finger as well as two-thirds of the metacarpal and had the ring finger bound up in scar tissue as a result of the accident.
Of the $75,000.00 awarded plaintiff, $10,000.27 was attributable to medical expenses and workmen's compensation benefits, and this amount was properly ordered paid to his employer's compensation insurer.
Plaintiff suffered extensive pain both from the blow to his head and the injury to his right hand. The latter required two operations, and plaintiff suffered considerable pain before the first and between the two operations. Dr. Hyman Soboloff testified that the crushing type injury damaged the nerves and blood vessels of the *273 hand, and that plaintiff will always suffer some pain in the hand due to irritation of the nerves by changes in the weather and sensitivity to cold because of damage to the blood vessels. Plaintiff also suffers from headaches due to the blow on his head.
In addition to his pain and suffering, plaintiff has a permanent 25% disability of the right hand. Since he is right handed and a welder by trade, there is a strong probability he will suffer loss of wages in the future because of this disability.
Both plaintiff and Dr. Soboloff testified that plaintiff can no longer use his welding arc with his right hand for long periods of time. Dr. Soboloff testified that the weakness in his dominant hand prevents him from using it for a full working day. Further, Dr. Soboloff stated that plaintiff's right hand was both a "badly functioning hand" and a "badly disfigured" hand. Plaintiff testified that his wrist as well as his hand was affected by the accident, and that his hand gives out easily. He misses work as a result of his disability and has failed to get two jobs for which he would otherwise have been eligible. Also, plaintiff testified that he can no longer climb in the course of his work because of the weakness in his hand. His present rate of pay is $4.05 an hour as opposed to $5.55 an hour at the time of the accident. Plaintiff was 36 years old at the time of trial, May 25, 1972, and in his twenties at the time of the accident, April 30, 1964.
Plaintiff is unquestionably handicapped in the job market because of his disability. Although his future loss of wages cannot be fixed with precision, the jury would have been justified in allocating a substantial portion of its award to this item of damages.
Plaintiff's hand is substantially disfigured and this is another item which the jury may have considered properly in allowing damages.
Of lesser importance in determining plaintiff's damages but nonetheless worthy of consideration is the fact that he can no longer play basketball, football and baseball, as he was wont to do.
While the jury's award is a large sum of money, we are mindful of the rule that the type of injury has small significance in determining the amount of damages. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
The duties of the Court of Appeal in reviewing a jury's award are described in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967), as follows:
[3] We recognize that in cases of this type the Constitution makes it the duty of appellate courts to review both the law and the facts, but in their examination of the fact these courts must give effect to the basic law set out in Article 1934(3) of our Civil Code that in the assessment of damages in cases of offenses and quasi offenses "much discretion must be left to the judge or jury". This law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the lower court. 200 So.2d 131, 132.
In the present case the jury placed an evaluation of $75,000.00 on plaintiff's injuries. This award was allowed to stand by the trial judge although he had the authority to modify it. LSA-C.C.P. 1813. We find no clear abuse of the much discretion of the jury. Robison v. Garnett, 238 So.2d 58 (La.App. 1 Cir. 1970).
For the reasons assigned we affirm the judgment rendered in favor of plaintiff. Costs of the appeal are taxed against defendants.
Affirmed.

*274 On Application for Rehearing
Rehearing refused as to all applicants. The intervenor, Hardware Mutual Cas. Co., has raised the point in an application for rehearing and/or corrected judgment that the concluding language of the original opinion may leave doubt as to its claim; we affirmed the judgment of the trial court in its entirety which protects intervenor in this regard.