319 So.2d 867 (1975)
John L. BURROWS et al., Plaintiffs-Appellees,
v.
LOUISIANA STATE DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 5130.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1975.
*868 William J. Doran, Jr., Baton Rouge, for defendant-appellant.
Kay, Stewart & Nichols by Stuart S. Kay, Jr., DeRidder, for plaintiffs-appellees.
Before DOMENGEAUX, WATSON and HALL, JJ.
WATSON, Judge.
This is a claim in tort resulting from a one-car accident, in which the trial court held the defendant liable for a negligent failure to post adequate warning devices at a bridge-construction site. From the adverse ruling, defendant has appealed and the plaintiff-driver has answered the appeal asking for an increase in damages.
Plaintiffs are John L. Burrows, the automobile driver, who sustained severe personal injuries in the accident, and the United States of America, Department of the Army, the owner of the vehicle damaged in the accident and the employer of Burrows. Defendant is the State of Louisiana, Department of Highways. Judgment was awarded by the trial court to Burrows in the amount of $75,000, all as general damages for pain, suffering and *869 disability; recovery was denied for special damages claimed by Burrows for loss of wages, future loss of wages and loss of retirement benefits. Judgment was given to the United States Army in the amount of $6,435.35 for the value of the automobile demolished in the crash and the value of medical treatment rendered by the United States Army to its employee, Burrows.
The accident occurred on November 24, 1972, which was the Friday following Thanksgiving, at approximately 6:30 p. m. The site of the accident was on the Old Merryville Highway, also known as Blankenship Drive, in the city of DeRidder, Louisiana, where the Department of Highways was in the process of construction work which involved removal and rebuilding of a bridge. The work was being performed by a Department crew.
The work had been in progress only a few days and the bridge had not been entirely demolished, but, on the east side at the point where the street joins the bridge, a number of heavy creosote posts had been embedded vertically in the road for the obvious purpose of preventing vehicles from running into the creek below. There is no evidence that there were any signs, reflectors, lights or other warning devices on the creosote posts, and the posts were dark in color.
Burrows, a member of the United States Army assigned to the criminal investigation division and stationed at Fort Polk, Louisiana, left his home in DeRidder a few minutes prior to the accident, entered Blankenship Drive from Davella Drive (some 1,000 feet from the bridge site) and was driving in a westerly direction on Blankenship. The evening was dark and a light rain was falling; there is a dispute in the testimony as to the presence of ground fog. Burrows testified without contradiction that he was proceeding at a safe rate of speed within the speed limit and driving cautiously because of the weather conditions. As he proceeded on Blankenship, he saw a "caution men working" sign which led him to believe that there was roadwork in the area, possibly asphalt repair, and he moved his vehicle more toward the center of the road with the thought that the repair might be of "chug holes". There was no other traffic.
The bridge site, according to the record, was at a dip in the road. As Burrows came to within five or ten feet of the timbers embedded in the road, he realized that he was going to hit them and tried to steer his vehicle into a gap between them. However, the vehicle crashed into the creosote posts, rendering it a total loss and severely injuring Burrows.
The issue presented by the Department of Highways on appeal is whether it negligently breached its duty to warn the approaching motorist of the obstruction in the highway. The issue presented by Burrows' appeal is whether the award is adequate. No issue is presented concerning the amount awarded to the United States Army, if there is liability. However, the Department of Highways also makes the contention that the award to Burrows is excessive.
The trial court, in a lengthy and well-reasoned opinion, concluded that the Department of Highways had negligently failed to warn Burrows of what the trial court found to be a "trap" on the highway. From our study of the record we conclude that the trial court was correct. A preponderance of the evidence indicates that there were no flares, no flashing devices and no reflectors at the bridge site. At the time of the accident there was not even a sign which would indicate that the bridge was out. The only signs present at the time of the accident were two reading "Road Work Ahead" and two reading "Men Working" or something similar. Various witnesses indicated different wording on these small, non-reflective signs. There is evidence indicating that at some point in time prior to the accident, a black and white striped board with a small, nonreflective sign reading "Bridge Out", *870 had been in place 20 or 25 feet in front of the creosote posts. However, the record is clear that this sign was not present at the time of the accident and the record is uncertain as to when it was last in place.
Particularly applicable here is the rule that the safeguards provided must be in proportion to the danger which lies ahead. Dowden v. State, 81 So.2d 48 (La. App. 2 Cir. 1955); Von Cannon v. State, Department of Highways, 306 So.2d 437 (La.App. 3 Cir. 1975), writs denied, La., 309 So.2d 681, 682.
The trial court concluded that the signs and the barricade were totally inadequate to warn approaching motorists. We agree. Therefore, the Department of Highways breached its duty to plaintiff Burrows. This breach of duty was certainly a cause in fact of the accident.
There is no support in the record for the contention by the Department of Highways that Burrows was contributorily negligent. We agree with the trial court's conclusion that there was no proof of any negligence on the part of Burrows.
The Department of Highways contends that the public had been warned through newspaper and radio advertisements of the removal of the bridge. The trial court correctly concluded that Burrows did not see or hear these warnings. The mere publication or broadcasting of information that a road is closed or a bridge is out is not in and of itself adequate notice to the motoring public.
Another contention by the Department of Highways is that their employees had adequately posted warning signs and flares at the bridge site, but unknown persons had removed these devices. We do not find the evidence on this contention convincing and, apparently, the trial court did not. The principal witness on this point for the Department of Highways was Fred Bass, an employee who was in charge of placing warning signs at the bridge. According to him, at the conclusion of work on Wednesday there were two "roadwork" signs, two "flagman ahead" signs, two "right-lane closed" signs (for what purpose no one knows), one "road closed" sign in the middle of the road on a portable metal stand with two burning flares and one wooden board on sawhorses some 25 feet from the bridge with a "bridge out" sign and three burning flares. The testimony of other witnesses sharply contradicts that of Bass; no one else ever saw the "right-lane closed" signs or the "road closed" sign. No flares were found at the bridge site on the west side immediately following the accident, but the `bridge out' sawhorse was found in the ditch. The record strongly indicates that Bass was, at best, mistaken in his description of the signs.
The Department of Highways emphasizes the testimony of one Slayden, another employee of the Department of Highways, whose duty it was to check the bridge site when the regular crew was not working. The regular crew was off from Wednesday afternoon til the following Monday for the Thanksgiving holidays, and it will be recalled that the accident occurred on the Friday following Thanksgiving. While the trial court stated in reasons for judgment that it believed Slayden, the principal thrust of Slayden's testimony was that he was concerned only with the flares and not with the signs. Although he testified that he checked the site on the afternoon of the accident, his testimony is vague and unclear as to what signs were present. His testimony, and that of Bass, is not convincing that the site was adequately posted with warning devices.
We are impressed with the fact that the witnesses for the Department of Highways testified that they had had flares stolen prior to the accident from this construction site. With this knowledge, a duty devolved on the Department of Highways to erect warning devices of a type which could not be easily moved or stolen, *871 or to take other precautions. The theory of the Department is that the proper warning devices, signs and flares were present and someone unknown removed these devices, thus absolving the Department of Highways from liability for Burrows' crash into the creosote posts. This contention fails for the reasons that:
(1) the record establishes that the site was not properly and adequately marked with warning devices in the first place; and
(2) there is evidence which should have put the Department of Highways on its guard to exercise special care to maintain its signs and flares and to warn the motoring public of the hazard; there is no evidence of any special care.
Therefore, the trial court properly and correctly resolved the issue of liability against the Department of Highways and entered judgment in favor of the United States Army and in favor of Burrows.
Quantum
The trial court awarded the sum of $75,000 to Burrows for his injuries which consisted principally of a comminuted fracture of the left leg with a separate "butterfly fragment"; lacerations of the scalp and face which required sutures; partial severing of ligaments in the left knee; and severe bruising of internal organs. This resulted in a lengthy hospital stay from the date of the accident until January 13, 1973. The leg remained in a cast until May, 1973. During his treatment, Burrows underwent six different surgical procedures, most of which were in connection with the fracture but one of which was a general laporotomy necessitated by severe swelling of the abdomen and a drop in blood pressure. This procedure consisted of opening the entire abdominal cavity for inspection and examination of the internal organs. A severely bruised colon was found to be the main cause of abdominal pain and swelling. Burrows has as a result a 14-inch scar on the front of his body.
The healing of the fracture resulted in a 22-degree angulation of the bone and left Burrows with a slight limp. The medical testimony by Dr. Rudolph E. Hamsa, an orthopedic surgeon of Fort Polk, and by Dr. Norman P. Morin, an orthopedic surgeon of Lake Charles, indicates that Burrows has a 20% partial permanent disability referrable to the left leg and that his situation cannot improve but will get worse. The reason for this is the strain placed on the knee and especially the hip by the fracture and the angulated healing. Also, there is an arthritic condition in the knee resulting from the severing of ligaments in the knee in the accident.
Without further detailing Burrows' medical situation, we find that the medical evidence presents a picture of a 36-year-old, robust, criminal investigation agent of the U. S. Army, who is now partially crippled and will remain so for the rest of his life.
The trial court is accorded much discretion in awarding damages. LSA-C. C. art. 1934; Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Fox v. State Farm Mutual Automobile Insurance Co., 288 So.2d 42 (La.1973); Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La.1974); Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974); Bitoun v. Landry, 302 So.2d 278 (La.1974).
The award to Burrows of $75,000 for his pain, suffering and disability is well within the bounds of the trial court's discretion. Cf. Jenkins v. Dixie Rental Tools and Casing Crews, Inc., 283 So.2d 271 (La.App. 1 Cir. 1973), writ denied, La., 285 So.2d 542; O'Keefe v. Warner, 288 So.2d 911 (La.App. 1 Cir. 1973), writ denied, La., 293 So.2d 170.
*872 The question of an award for loss of earnings, future loss of earnings and future loss of retirement benefits presents a close and difficult issue. However, we are in accord with the trial court which found that the proof in connection with plaintiff's claim is not sufficient upon which to base an award. We have the distinct impression that Burrows will suffer a loss of income in the future because of his injuries; obviously, a man with his disability will not be able to obtain employment and to work in the criminal investigation field as well as he could in a perfect state of health. However, the evidence as to his loss of promotion prospects, the possibility of medical discharge from the Army, and the reduction in retirement benefits is largely speculative. There are simply no specific conclusions which can be drawn and which could serve as a basis for an award.
Therefore, we find that the award made by the trial court is neither excessive nor inadequate. The judgment of the trial court is affirmed. Costs, insofar as the law provides, are taxed against defendant, State of Louisiana Department of Highways.
Affirmed.