SARTAIN, Judge.
This is an action for personal injuries and special damages brought by Elmore J. Songe following an accident which occurred on Louisiana Highway 24, south of Shriever, Parish of Terrebonne, Louisiana. Plaintiff appeals from a judgment dismissing his suit. We reverse.
Between the hours of 6:30 and 7:00 A. M. o’clock, plaintiff was driving his 1957 Chevrolet automobile in a northerly direction on Louisiana Highway 24. He was followed by a pickup-camper truck which was pulling a small trailer laden with two motorcycles. Carl Johnson, driving a 1970 Pontiac automobile, was following the pickup truck. As plaintiff was attempting a left turn into a service station, situated on the west side of the highway, the left rear of his vehicle was struck by the left front of the Johnson vehicle. The pickup truck was not involved in the accident and its driver remains unidentified.
Plaintiff sued Johnson, his employer, Louisiana Offshore Caterers, Inc., and the latter’s liability insurer, Highlands Insurance Company. The United States of America intervened for hospital and medical services rendered to the plaintiff by the Veteran’s Administration Hospital in New Orleans, Louisiana, in the sum of $1,671.-00.
We are not favored with written or oral reasons for judgment. However, the judgment signed by the trial judge states, inter alia, “that the defendants have sustained the burden of proving their alternative defense of contributory negligence of the plaintiff.”
Plaintiff testified that on the morning of the accident he and his family planned to go fishing and that he was on his way to the service station to get gas and soft drinks. He explained that upon approach *245 ing the service station he observed the pickup truck behind him at a distance of “about twenty feet”; that nothing was in front of him; that he activated his left turn signal; and that when he was about halfway into the driveway of the service station he heard an “explosion” that swung him around. He estimated that prior to his turning maneuver he was traveling 25 m.p.h. but at the commencement of such maneuver his speed had been reduced to 10 m.p.h. He last observed the pickup when it continued on past him in its proper right hand lane. Obviously, the explosion referred to by the plaintiff was the contact made between his and the defendant’s respective automobiles. He did not see or know the presence of the Johnson vehicle.
Defendant, Carl Johnson, testified that he was traveling approximately 40 m.p.h. following the aforementioned pickup-camper truck. He stated that all of a sudden the pickup truck cut sharply to its left and then just as abruptly back to its right. Upon observing this maneuver he (Johnson) responsively cut to his left only to observe the presence of the Songe vehicle when the pickup truck cut back to its right. He immediately applied his brakes but could not avoid the collision. The first knowledge that Johnson had of the Songe vehicle was when he saw the same after the pickup truck had cut back in its right.
Trooper Gregory Whitney investigated the accident for the Louisiana State Police. He found that the accident had occurred entirely within the southbound lane of Louisiana Highway 24, that the Songe vehicle had “spun around” about 180° and had traveled approximately twenty feet after the point of impact. The Johnson automobile remained almost at or very near the point of impact. He verified the fact that the left front portion of the Johnson vehicle collided with the left rear portion of the Songe automobile. Though he did not indicate the length of the skid-marks left by the Johnson automobile, he stated that the accident happened with such rapidity that only the rear wheels of that vehicle left skidmarks. He estimated that Songe was traveling 15 m.p.h. and Johnson was traveling 40 m.p.h. just prior to impact. His report showed that both of the drivers mentioned the presence of the pickup truck.
We are satisfied that the negligence of Carl Johnson is well established. Either because of the length of time that lapsed between the date of the accident and the trial of this litigation, his recollection of many of the details concerning the accident- was either nil, vague, or indefinite. He was, however, specific in reiterating that he just responsively followed the pickup truck into the wrong lane, guessing that the truck’s reason for doing so was that “it could have been something there, I don’t know.”
Counsel for defendant argues that the testimony of the plaintiff to the effect that the truck was twenty feet behind him when he activated his left turn indicator, plus the sudden maneuver of the pickup truck to its left and then back to its right, support the inference that plaintiff’s left turn maneuver was sudden, precipitous, and contrary to the duty imposed upon a motorist endeavoring to make a left turn into a private driveway. Accordingly, he argues that the trial judge, who heard and saw the witnesses, was justified in finding contributory negligence on the part of the plaintiff. We concede that there is a conflict in the testimony of the respective drivers. Songe contends that the left turn maneuver was routine and commenced only after ample notice to the following truck; whereas, Johnson’s testimony concerning the sudden changes of direction on the part of the truck indicates the contrary. Thus, defendant submits that it is a question of credibility and the trial judge’s decision should be accorded the weight our law recognizes and be permitted to stand.
We review the issue here involved as one of law rather than one of fact, i. e., *246 whether the duty owed by a left turning motorist to a second following motorist extends to the defendant herein, whose conduct we consider to be most abnormal.
It is well settled that a left turning motorist is required to exercise a high degree of care, including the duty to watch for approaching and overtaking traffic. Jacobs v. State Farm Mutual Automobile Insurance Company, 191 So.2d 908 (1st La.App., 1966); Hudgens v. Mayeaux, 143 So.2d 606 (3rd La.App., 1962); and Faulkner v. Ryder Tank Lines, Inc., 135 So.2d 494 (2nd La.App, 1961).
In determining whether a left turn can be made in safety, a motorist has every right to assume that following traffic will observe all of the duties imposed on it by law and common sense, such as that a following driver will not pass at an intersection, over a double line, and in particular, keep a proper lookout. Faulkner v. Ryder Tank Lines, Inc., supra.
Primarily, Songe’s duty in the instant matter with respect to following traffic was owed to the driver of the pickup truck and concededly to defendant’s vehicle if defendant in fact had properly commenced a passing maneuver at such time as it should have been noticed by the plaintiff. Jacobs v. State Farm Mutual Automobile Insurance Company, supra. In the instant case Johnson denied repeatedly that he was in the process of passing the pickup truck and plaintiff.
Defendant is basing his entire case on the assumption that the conduct of the driver of the pickup truck (as defendant described it) was necessitated by some improper action on the part of the plaintiff. Yet, Johnson could not state in car lengths or otherwise the distance between his vehicle and that of the pickup truck. At one point he stated he thought the truck was actually going to pass plaintiff’s vehicle. The record makes it abundantly clear to us that this driver was not keeping a proper lookout. He simply begs the question of his own inattention and leaves to pure speculation the reasons for the actions of the driver of the pickup truck.
For these reasons, we are constrained to hold that the duty owed by the plaintiff herein to reasonably signify his intention to make a left hand turn to the overtaking motorist (pickup truck) and the risk attendant for his failing to do so do not extend to the driver of the third vehicle, who we are satisfied, was basically oblivious to the conditions preceding him. Defendant has failed in the burden of proving the contributory negligence that he has alleged on the part of the plaintiff.
We now turn to.the question of plaintiff’s injuries and the quantum to be awarded therefor. 'Plaintiff claims that as a result of the accident he sustained an injury to his lumbarsacral spine and an aggravation of a pre-existing degenerative joint disease of the lumbar spine. He further claims that as a result of these injuries he is no longer able to perform the type of work in which he was engaged prior to the accident.
We are of the opinion that the record supports a finding that plaintiff sustained a lumbar sprain but does not justify any award based on an aggravation of a preexisting back condition.
At the time of the accident, plaintiff was employed by Food and Services, Inc, Hou-ma, Louisiana. His duties were primarily janitorial but included maintaining his employer’s premises, cutting grass, painting, packing goods, and general all around handy work. He obtained this job through the efforts of his nephew, Stanley Bussey, Jr. Bussey was also plaintiff’s immediate supervisor.
The accident happened on Sunday, April 1, 1973. Plaintiff stated that he stayed in bed the remainder of that day. On the following day, Monday, he reported to work and continued at his job on a regular basis *247 until June 23, 1973. At no time during this period of employment did plaintiff ever complain of pain or back discomfort to his nephew-supervisor nor even tell him that he was injured in the accident. His employment was terminated because he “slacked” off in his work, was not doing it properly, and was leaving early “because he was tired.” He was terminated because one of his employers considered his work to be unsatisfactory. His nephew considered his work satisfactory.
There is not one scintilla of evidence in the record to show that plaintiff saw any doctor or received any treatment prior to June 16, 1973, when he went to Dr. Matko Milicic, an orthopedic specialist.
Dr. Milicic testified by deposition. He stated that his examination of plaintiff on July 16, 1973 revealed that plaintiff walked without a limp; toe and heel walking were performed without difficulty; there was a full range of motion of the lumbar spine without producing any particular discomfort; there was no muscle spasm; and the straight leg raising tests were satisfactorily performed. Typical neurological examination revealed no neurological deficits. Plaintiff did complain of tenderness over the eleventh rib on the right side. Dr. Milicic concluded that the first examination was without any “impressive positive clinical findings.” His diagnosis was that plaintiff had sustained a lumbar sprain with degenerative joint disease. He advised a lumbosacral corset and prescribed Valium. Throughout eight or nine subsequent visits, Dr. Milicic’s evaluation, treatment and diagnosis of the plaintiff remained the same.
The record is indecisive as to the diagnosis of a lumbar sprain with respect to' whether plaintiff was still suffering from this sprain at the time of his initial visit or whether he had recovered from this particular injury and was suffering from the degenerative back condition. We must assume that plaintiff had recovered from the back sprain because of the evidence relative to his continued employment without complaint and lack of medical treatment for almost three months following the accident.
Dr. Milicic was asked particularly whether in his opinion plaintiff’s degenerative back condition was such as would prevent him from working on a full time basis. He answered, “It is very difficult to say; I don’t know.” We find it significant that plaintiff’s own physician recommends that plaintiff increase his physical activity. This medical testimony, coupled with that of plaintiff’s immediate supervis- or, negates the testimony of plaintiff himself, his wife and son, that plaintiff is incapable of performing the type of work that he did before the accident.
The only other medical expert to testify was Dr. Richard Landry, an orthopedic surgeon, who examined plaintiff on one occasion for the defendant. This witness did not feel that plaintiff had sustained any permanent partial physical impairment as a result of the accident. The only physical finding that his examination revealed was plaintiff’s inability to reach forward and touch the floor which indicated “some tightness of the lumbar area, consistent with the degree of arthritic changes noted in plaintiff’s spine.” This witness would have approved a pre-employment examination of the plaintiff and recommended his employment without any type of limitation.
Under these circumstances, viewing the above testimony in a light most favorable to plaintiff’s position, we are constrained to hold that plaintiff has failed to prove a causal relation between the accident and complaints attendant to a pre-ex-isting arthritic condition of the spine. For these reasons, plaintiff’s recovery is limited to pain and suffering and special damages for a lumbarsacral sprain.
The medical evidence does not indicate the severity of the muscle sprain, i. e., whether it was a mild, moderate or severe one. Since he was observed almost daily *248 during the course of his employment following the accident, we must conclude that the sprain he sustained was a mild one, which did not impair his ability to work. We believe the sum of $1,500.00 will adequately compensate him for whatever pain and discomfort he endured as a result of this particular injury.
With respect to special damages, plaintiff submitted bills for medical treatment totaling $246.80 (corset, $46.80; Dr. Milicic, $200.00). In addition, plaintiff submitted an estimate for repairs to his 1957 Chevrolet automobile in the amount of $356.72. However, plaintiff had just purchased this automobile several months before the accident for $150.00. We think he is entitled to the latter sum since it reflects the actual value of the vehicle at the time of the accident. The automobile has not been repaired and plaintiff’s recovery for this item must be limited to the value of his loss. Davis v. Roberts, 194 So.2d 772 (1st La.App., 1967).
Plaintiffs claim for loss of wages, past and future, are denied. As stated above, plaintiff worked from the date of the accident, April 1, 1972, until June 23, 1973. His complaints following his termination from employment are related to a pre-existing degenerative back condition which he has failed to prove was aggravated by the accident. Even assuming an aggravation, the medical testimony is to the effect that plaintiff should and could return to work.
We are also of the opinion that the intervention of the United States of America for hospital and medical services furnished plaintiff at the Veteran’s Hospital in New Orleans should be rejected. The hospital records were offered in evidence together with a stipulation that charges for these services are valued at $1,671.00. It is apparent from a cursory examination of these records that the medical services rendered to plaintiff related entirely to the preexisting condition which we have discussed above.
Accordingly, for these reasons, the judgment of the district court is reversed and judgment is rendered herein in favor of the plaintiff and against the defendants, Carl Johnson, Louisiana Offshore Caterers, Inc., and Highlands Insurance Company, in solido, in the amount of ONE THOUSAND EIGHT HUNDRED NINETY-SIX AND 80/100 ($1,896.80) DOLLARS, together with legal interest thereon from date of judicial demand, until paid, and for all costs of this suit. Judgment is further rendered herein dismissing the reconventional demand of the United States of America.
REVERSED AND RENDERED.