Thomas M. O'DONNELL

v.

UNITED STATES of America,

Louisiana Farm Bureau Mutual Insurance
Company, Third-Party Defendant,

Dixie Automobile Insurance
Company, Intervenor.

Janice K. MARTIN

v.

UNITED STATES of America,

Louisiana Farm Bureau Mutual Insurance
Company, and Thomas M. O'Donnell,
Third-Party Defendants.

Civ. A. Nos. 750346, 751086.

United States District Court,
W. D. Louisiana,
Shreveport Division.

March 18, 1977.

James E. Bolin and Henry A. Politz, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, La., for plaintiff in No. 750346.

James E. Franklin, Jr., Shreveport, La., for plaintiff in No. 751086.

Donald E. Walter, U. S. Atty., Lawrence L. Jones, Asst. U. S. Atty., Shreveport, La., for the Government.

Jack O. Brittain, Brittain & Williams, Natchitoches, La., for third party defendant Louisiana Farm Bureau.

James E. Bolin, Booth, Lockard, Jack, Pleasant and LeSage, Shreveport, La., Charles W. Salley, Lunn, Irion, Switzer, Johnson & Salley, Shreveport, La., for Thomas M. O'Donnell in No. 751086.

John R. Herzog, Lunn, Irion, Switzer, Johnson & Salley, Shreveport, La., for intervenor in No. 750346.

## RULING

DAWKINS, Senior District Judge.

Plaintiffs, Thomas M. O'Donnell and Janice K. Martin, filed separate suits against the United States here under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*, after properly exhausting their administrative remedies. Our jurisdiction is based upon 28 U.S.C. § 1346(b). We consolidated the actions for trial since both involved the same automobile-motorcycle accident.

### Facts

On April 13, 1974, plaintiffs were travelling easterly on Louisiana Highway 6, a two-lane, black-top road, on a 1973 Yamaha "500" motorcycle owned and operated by O'Donnell. Miss Martin was riding upon it, seated behind him, as a passenger. It was a clear, dry day, and driving conditions were good. Both plaintiffs were in their twenties. Rolla H. Kelly, approximately 73 years of age, likewise was driving easterly in a 1966, four-door, Ford automobile which he owned and operated under contract with the United States Postal Service. He was engaged in his duties as a rural mail carrier.

When Kelly was within about 75 to 100 feet from a private, unmarked driveway leading to a residence some distance away from the highway, he slowed somewhat in order to make a left turn into the driveway. He claimed at trial he activated his left-turn blinker light and gave a hand signal. We find, however, that, if he did this at all, it was undoubtedly just as he made the left turn, not beforehand. Meantime, plaintiffs, on the motorcycle, were proceeding in the westbound lane of traffic, in order to pass Kelly on the straight stretch of highway marked as a passing zone with a broken center line.

Kelly began his left-hand turn. He stated that he checked the rear-view mirrors 75 to 100 feet before he began his turn, but not immediately before turning. He knew the motorcycle was following him because he had seen it in his rear-view mirrors. He placed it, at the time he looked, as crossing a bridge which actually was some 1200 feet to the west. The motorcycle collided with the left rear panel of Kelly's car in the westbound lane of traffic as he was turning left onto the private, unmarked driveway. There was not even a roadside mail box at the point, in open country, miles removed from any urban area, with nothing to indicate to oncoming drivers that a vehicle ahead might be turned to its left.

The accident occurred about noon. Kelly's automobile was damaged, but he received no injuries and later finished delivering the mail assigned to him that day. Plaintiffs were hurled through the air in the collision and landed on the north side of the road, in or near a roadside ditch. Both were rather seriously injured, as will be shown *infra*.

O'Donnell and Miss Martin have sued the United States. Miss Martin also named O'Donnell as a defendant. The United States filed a third-party complaint against Kelly's automobile liability insurer, Louisiana Farm Bureau Mutual Insurance Company, and O'Donnell. Finally, O'Donnell's insurer, Dixie Automobile Insurance Company, intervened to recover the amount it had paid to O'Donnell for the damage to his motorcycle.

### Liability

Two so-called accident reconstruction experts testified at trial about the proper co-efficient of friction to use for calculating the motorcycle's deceleration rate and speed; the flight pattern plaintiffs followed as they were hurled through the air; the distance the rear of Kelly's vehicle was moved easterly upon being struck by the motorcycle, and other such things tending to show whether O'Donnell was guilty of fault which was a cause in fact of the accident. The theories advanced by these would-be experts effectively cancelled one another because they arrived at almost diametrically opposite conclusions, especially as to the speed of the motorcycle.

We have heard these same two "experts" testify on opposite sides in a large number of cases at which we presided. In all such cases juries consistently have rejected their opinions; and we must do so here. Regretfully, we must and do conclude that their "expertise" is "for hire" to whoever first is willing to fatten their pocketbooks. We find no believable evidence supporting the theory that O'Donnell was driving negligently or that he acted unreasonably once he realized the perilous situation he faced.

On the other hand, direct and undisputed facts show that Kelly was wholly at fault and alone caused the accident. He was travelling in his own automobile which was not marked as a Postal vehicle and in no way indicated to other drivers that he might slow, stop, or turn any differently than other drivers.

The most significant factor we find here, in holding Kelly to be solely at fault, was that he admittedly did not look back or check his rear-view mirrors immediately before turning, even though he knew the motorcycle was following him. He had been proceeding at about 35 m. p. h. and slowed down gradually (he did not use his brakes so his "stop" lights did not light up) after checking his rear-view mirrors for the last time about 75 to 100 feet before commencing his turn. He should have checked immediately before turning to make sure he still could execute this highly dangerous maneuver with safety for himself and others.

Louisiana courts have characterized a left turn by a motorist as ". . . one of the most hazardous maneuvers that a driver is called upon to perform . . .":

"Myriad cases in our jurisprudence have proclaimed and reiterated the firmly established rule imposing a strict duty of care upon a left turning motorist. The applicable principle requires that not only shall the left turning driver give visible signal of such intent, but he must also yield the right of way to both oncoming and overtaking traffic and not attempt such a turn until the highway is free of overtaking or oncoming vehicles which may be thereby endangered.

"Under the facts and circumstances of the instant case, the following appearing in the recent case of *Bickham v. Bogalusa Coca-Cola Bottling Company*, 1968, La. App., 215 So.2d 921, is peculiarly applicable.

" 'It is the well-settled law and jurisprudence of our state that a person who attempts to make a left turn or who attempts to turn from a direct line on the public highways of the state must ascertain before turning that the turn can be made safely without endangering normal overtaking or on-coming traffic. E. g. *Blanchard v. Ashby Construction Co.*, La.App. 1st Cir., 1957, 95 So.2d 670; *Methvin v. Roshto*, La.App. 1st Cir. 1957, 96 So.2d 383. The onerous burden placed upon a left turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal,

which fact is disputed in the instant case, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety.

\* \* \* \* \* \*

" 'Pertinent under these circumstances is the observation made by the court in *Service Fire Insurance Company (of New York) v. Suezy*, La.App. 1st Cir., 1954, 77 So.2d 110:

" ' "By his own admission the defendant did not exercise such caution, as, although he knew that the Hartner car was following him, he did not look immediately prior to turning to determine that the way was clear. Regardless of whether or not he had given a hand signal, he knew that there was traffic behind him and yet failed to exercise the caution that the law imposes upon him. By just giving the hand signal Suezy only performed one half of his duty. He should also have looked to see if the way was clear. If he had looked, he would have seen he could not make the turn safely. This is similar to a motorist who comes to an intersection and stops but fails to look for approaching traffic. He only performs one-half of his duty under the law. This was definitely an act of gross negligence on the part of the defendant and was a proximate cause of the accident, if not the proximate cause of the accident." ' " *Magee, et al v. Yates, et al*, 219 So.2d 299, 302 (La.App. 1st Cir., 1969).

" \* \* \* Furthermore, the court has determined that the passing maneuver had begun prior to the attempted left turn and had the right to believe the lead car would yield the right of way in accordance with LSA–R.S. 32:104. In the case of *Kimball v. Landreneau*, 1st Cir., La.App., 170 So.2d 665 at page 670 the court quoting from *United States Fidelity & Guaranty Co. v. Bergeron*, La.App., 148 So.2d 162, with approval stated:

" 'It is the [*sic*] hornbook law that a left hand turn across a highway constitutes one of the most hazardous maneuvers that a driver is called upon to perform and he must initially ascertain by careful observation that the maneuver can be executed safely without danger to normal overtaking and on-coming traffic and must yield right-of-way to such vehicles.' (Citation omitted)

" 'The burden rests heavily on the motorist who desires to make a left turn to explain how the accident occurred and to show that he was free from negligence. (Citation omitted)' " *Jacobs v. State Farm Mutual Automobile Insurance Co., et al*, 191 So.2d 909 (La.App. 1st Cir., 1966).

The Federal Tort Claims Act, 28 U.S.C. § 1346(b), provides that the law of the place where the act or omission which caused the damage shall apply. *United States v. Inmon*, 205 F.2d 681 (5th Cir., 1953). As noted, under Louisiana law, left-turning motorists must show that they used all reasonable care in ascertaining whether a left turn could be made in safety, not only to themselves, but to oncoming or passing motorists. *St. Paul Fire & Marine Insurance Company v. Heath*, 302 F.2d 326 (5th Cir., 1962); *Songe v. Highlands Insurance Company, et al*, 336 So.2d 243 (La.App. 1st Cir., 1976). Moreover, it has been held that "A left-turning motorist cannot discharge his burden of ascertaining whether the turn can be made in safety by making his observation some distance from the intersection, but he is required to look to his rear immediately before attempting to turn." *Scrantz v. Aetna Casualty & Surety Company*, 281 So.2d 820, 823 (La.App. 1st Cir., 1973).

Defendant makes three arguments in urging that Kelly did not breach his duty to drive safely, the duty owed to plaintiffs, while making his left turn: (1) It cites *Paggett, et al v. Travelers Indemnity Company, et al*, 99 So.2d 173 (La.App. 2d Cir., 1957), as showing that the complete burden of proof is not placed upon a driver making a left turn to exculpate himself from negligence. Rather than relying upon any presumed rule as to burden of proof, plaintiffs here have shown affirmatively that Kelly was guilty of the grossest negligence in failing to look to the rear immedi-

ately before turning. (2) Defendant cites *Ducote, et al v. Allstate Insurance Company, et al*, 242 So.2d 103 (La.App. 1st Cir., 1970) and *Prewitt v. St. Paul Fire & Marine Insurance Company, et al*, 126 So.2d 389 (La.App. 2d Cir., 1960), which hold that a passing driver's negligence is the proximate cause of an accident when he is driving at an excessive rate of speed, though the lead vehicle is turning left. Of course, we are not able to determine the exact speed of the motorcycle immediately prior to the accident either from direct evidence or from the conflicting experts' opinions. Even if we were to use the maximum approximated speed of the motorcycle—63 to 65 miles per hour—O'Donnell's speed alone would not be negligence *per se*. His speed must have been a cause in fact of the accident. O'Donnell maintained control of the motorcycle right up until the point of impact. We are unable to find that his speed helped contribute to the occurrence of the accident as a cause in fact. (3) Defendant argues that O'Donnell must have begun his passing maneuver before Kelly began his left turn in order for the latter to have breached his duty to the former. *Motors Insurance Company v. Howell*, 266 So.2d 240 (La.App. 2d Cir., 1972); *Stephens, et al v. Allstate Insurance Company, et al*, 260 So.2d 176 (La.App. 2d Cir., 1972). The motorcycle's entire skid mark was found by the post-accident witnesses to be entirely in the left, or passing, lane, proceeding straight ahead; and other testimony placed the motorcycle in the passing lane prior to Kelly's beginning his left turn.

Defendant suggests that O'Donnell might have been violating LSA–R.S. 32:190.1 by not wearing a proper eye-protective device. Admittedly, this would not constitute negligence *per se* here; but defendant argues that O'Donnell's sight might have been blurred by wind pressure; thus, he failed to see the perilous situation quickly, when possibly he could have avoided the accident if he had used proper eye protection.

O'Donnell was wearing some type of sun glasses, and there was no testimony concerning how blurred or clear was his vision. Miss Martin testified that her eyes would "tear" (wind pushing the skin away from the eye) when she looked without glasses into the wind on the moving cycle; but, again, her eyes were totally unshielded.

Defendant argues, finally, that Miss Martin was negligent in not wearing a proper eye-protection device so she could help O'Donnell watch for dangerous situations, and she helped cause the accident by leaning to the right trying to peer around O'Donnell and see ahead. A motorcycle passenger sitting directly behind the driver hardly can see ahead well enough to help, especially here, since O'Donnell was considerably broader and taller than Miss Martin. There was no evidence that O'Donnell lost control of the motorcycle or swerved while he was braking. To the contrary, his skid mark was in a very straight line. Thus, Miss Martin in no way caused the accident.

As stated, we expressly find that Kelly's negligently executed left turn alone caused the accident. Defendant's arguments concerning the doctrine of "last clear chance" are inapropos, because O'Donnell obviously did not have *any* chance to avoid the collision.

## Quantum

We now deal with the issues concerning damages. Miss Martin claims damages resulting from the accident for the following: A fracture of her right femur; general bruises and cuts; leg scars, including one particularly long scar on her right thigh resulting from open reduction of the fracture; disability and a limp in her right leg due to this; various past and expected future medical expenses; a mild brain concussion with some retrograde amnesia; loss of earnings; and finally suffering and humiliation.

Considering the amount of pain and suffering Miss Martin has experienced since the accident, we award as special damages (1) $2,614.01 for past medical expenses, and (2) approximately $1,700.00 for cosmetic, or plastic surgery to be performed on her leg.

We must deny the amount sought as loss of earnings because she did so some work at home during the time she was bedridden, and the evidence is inadequate to determine the amount of her future earnings loss, if any. After surveying the Louisiana jurisprudence, we award Miss Martin $39,000.00 as general damages for the remainder of her claims. *Jemison v. Kennelly*, 333 So.2d 367 (La.App. 4th Cir., 1976), writ refused, La., 337 So.2d 877 (1976); *Glazer v. Louisiana Trailor Sales, Inc.*, 313 So.2d 266 (La. App. 4th Cir., 1975), writ refused, La., 318 So.2d 47 (1975).

O'Donnell claims damages for the following: Brain damage, specifically, loss of concentration, loss of emotional control, loss of intellectual functioning, reaction impairment, and retrograde amnesia; fractures and dislocations of left wrist; fracture of right thigh; cut and swelling of left eye and cheek; laceration of his penis; impairment of inter-personal relationships and *possible* failure of any future marriage caused by personality changes; and loss of future earnings.

O'Donnell's medical witnesses, to put it mildly, grossly exaggerated. We hereby award to O'Donnell as special damages (1) $10,792.00 for past medical expenses, (2) $3,960.00 for future medical expenses, and (3) $21,982 for loss of earnings from date of accident to trial. He also has received physical and emotional harm which will impair somewhat his future earnings potential. His proof is insufficient to place an exact dollar amount on future loss of earnings or his psychological impairment. He appeared bright, alert at trial, and immediately responsive. He readily answered all questions except those dealing with his minimal retrograde amnesia (his lack of memo-

ry concerning events occurring a short period of time just prior to, and at the moment of, the accident).

Therefore, we award O'Donnell $100,000.00 as general damages in addition to the special damages listed. *Burrows v. Louisiana State Department of Highways*, 319 So.2d 867 (La.App. 3rd Cir., 1975); *Jenkins v. Dixie Rental Tools & Casing Crews, Inc.*, 283 So.2d 271 (La.App. 1st Cir., 1973), writ refused, La., 285 So.2d 542 (1973).

We award the stipulated amount of $715.00 to Intervenor, Dixie Automobile Insurance Co., which it paid to O'Donnell for the damage to his motorcycle.

Louisiana Farm Bureau argues that the third-party demand filed against it by the United States was time-barred after the initial action had been filed by plaintiffs. It is clear that under 28 U.S.C. § 2415(b) and (f) (as amended),* the United States' third-party demand against Louisiana Farm Bureau is not barred.

Therefore, we grant judgment in favor of O'Donnell, Martin, and Dixie Automobile Insurance Company, and against the United States; and in favor of the United States in its third-party claim against Louisiana Farm Bureau Mutual Insurance Company to the full extent of its liability coverage. Counsel are instructed to file a judgment in accordance with the above rulings within ten days.

---

* "(b) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action accrues.

\* \* \* \* \* \*

"(f) The provisions of this section shall not prevent the assertion, in an action against the United States or an officer or agency thereof, of any claim of the United States or an officer or agency thereof against an opposing party, a co-party, or a third party that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . ."
See also *U. S. v. Kellum* (5th Cir., 1975) 523 F.2d 1284 and authorities cited therein at headnote no. 1.